# Railroad Commission v. Ala. North. Ry. Co.

*Bill to Enjoin Order to Establish a Union Depot.*

(Decided June 13, 1913. Rehearing denied June 30, 1913. 62 South. 749.)

1. *Constitutional Law; Delegation of Legislative Authority.*—The legislature can delegate the execution of laws to public officials and give them some latitude in their execution without it amounting to the delegation of legislative authority.

2. *Same; Railroad Commission; Statute.*—The legislature has power to create a railroad commission and authorize it to regulate the operation of railroads, provided that it be not invested with strictly legislative or judicial powers, and does not violate the provision as to due process of law, and equal protection, nor regulate interstate commerce.

3. *Same; Police Power; Railroad Regulation.*—So long as the state railroad commission acts within its legal sphere, its orders, in the exercise of the police power of the state, that railroads entering a town shall maintain a union depot, do not violate the state or Federal Constitutions as to due process of law, although its result may be that a railroad company is deprived of the use of its old depot or the use of a lot owned by it for locating its depot thereon.

4. *Railroads; Commission; Nature and Powers.*—A railroad commission legally constituted is not a legislative body or a court, but is an administrative body, although it exercises functions of a judicial nature in some instances.

5. *Same; Review of Orders.*—The exercise of the authority of a railroad commission in the establishment or removal of depots or stations, is reviewable, but its orders in that regard will not be controlled unless clearly erroneous.

6. *Same; Regulation; Depots.*—The legislature would have the power under its general police power to confer upon the railroad commission the power of regulating the location of railroad depots, etc., even if section 243 had not been enacted, as there is no prohibition in the constitution as to delegating such powers. .

7. *Same; Union Depots.*—Section 5543, Code 1907, authorizes the railroad commission to require different roads entering the same city to provide a union depot.

8. *Same; Depot.*—The order of the railroad commission examined, and it is held that the order did not require a joint ownership of the depot property by the several companies entering the city, and that as to this complainant it merely required that it use the depot erected by the other companies, if they agreed upon the terms of such use.

9. *Same; Reasonableness of Orders; Presumption.*—The orders of the state railroad commission regulating railroad depots and stations are presumptively reasonable, and will not be disturbed by the courts unless it is clearly shown that they are unjust or unreasonable.

10. *Same; Reasonableness.*—In determining whether an order of a railroad commission requiring the railroads entering a certain city to establish a union depot is a reasonable order, the needs and accommodation of the public and the effect of the order upon the property rights of the railroad company are the principal questions for consideration.

11. *Same; Enforcement of Orders; Defenses.*—A complainant railroad company cannot complain that an order requiring it to use a union depot to be constructed by another, is not enforceable because the designated location of such depot includes a part of the street, as that is a question between the company erecting the depot and the public, with which complainant is not concerned.

12. *Statutes; Validity; Invalid in Part.*—The provisions of section 5545, Code 1907, considered, and it is held that any invalidity in the provision authorizing the apportionment of the cost of erecting a union depot would not invalidate the provision authorizing the commission to require the erection of said depot.

APPEAL from Montgomery City Court.

Heard before Hon. GASTON GUNTER.

Bill by the Northern Alabama Railway Company against the Alabama Railroad Commission, to enjoin the enforcement of an order requiring the construction of a union passenger depot, or in the alternative to enjoin the requirement that complainant enter and use a union station required to be erected by other roads entering the same city. From a decree for complainant the Railroad Commission appeals. Reversed and rendered.

The order of the railroad commission was that the several railroad companies, to wit, the Kansas City, Memphis & Birmingham Railroad Company, the Illinois Central Railroad Company, and the Northern Alabama Railroad Company, being unable to agree upon a location for a passenger station (union) as required by former order of the commission, "the commission did visit the city of Jasper, and after hearing the evidence and representations offered by said railroad companies, do order and direct that the said union passenger station be constructed by defendants and be located and built upon a certain tract of land fully described in the order, and that the railroad companies jointly or severally proceed to acquire by purchase or condemnation the site designated. In the event of a failure to agree within the time allowed, that the Kansas City, Memphis & Birmingham Railroad Company, proceed to acquire by purchase or condemnation such parcel of land and to make and adopt plans for the erection of said station and make report of the same to the next meeting of the commission, and upon the adoption of such plans and the erection of such buildings, it is further ordered that the several railroad companies herein mentioned will enter and use the same upon such terms as may be agreed upon by all." The order contained other matters not necessary to be here set out. The bill avers that the complainant has its own joint freight and passenger depot almost in the heart of the town of Jasper, and had arranged and agreed before the order of the commission to build a new and larger joint station and had its plans prepared to that end, when a controversy arose between it and the citizens of Jasper as to the exact location of its new depot. The bill avers that the order of the commission is so unreasonable and arbitrary that it deprived complainant of its property with-

out due process of law in violation of the Constitution of Alabama and of the United States, and on that ground, and others set up in the bill, the order is null and void. The trial court granted a preliminary injunction, and on final hearing granted a permanent injunction restraining the order of the railroad commission, and the commission appeals.

ROBERT C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for appellant. Complainant had an adequate and complete remedy at law, and hence, has no standing in equity.—*Youngblood v. Youngblood,* 54 Ala. 486; *Ins. Co. v. Camper,* 73 Ala. 325. If the statute has provided no remedy by which the action of the commission will be reviewed, it has a remedy by certiorari.—*Miller v. Jones,* 80 Ala. 89; *Stanfill v. County Revenue,* 80 Ala. 287; *Comm. Ct. v. Johnson,* 145 Ala. 553. There is no ground for the contention that section 5545, Code 1907, is void because the power and authority of locating depots is conferred upon the Legislature by section 243, Constitution, as this section merely delegates administrative power which is constitutional.—*Ward v. State,* 154 Ala. 227; *Tallassee F. Co. v. Commissioners Court,* 158 Ala. 263; 70 Ga. 694; 161 Fed. 925. The order does not involve delegation of judicial power, nor is it a deprivation of property without due process of law.—*Interstate Com. Commission v. Cincinnati,* 167 U. S. 479; *Dyer v. Tuscaloosa B. Co.,* 2 Port. 296; 221 U. S. 132. There is vast distinction between the sovereign power of the state known as the power of eminent domain, and its police power.—*Bacon v. Walker,* 204 U. S. 411. This order is in the exercise of police power.—193 U. S. 52; 179 U. S. 87. There is no doubt of the power of the Legislature to empower the commission to order the lo-

cation of the station and the building of the depot.—
*R. R. Co. v. State,* 137 Ala. 439; 109 Mass. 103; 67 N.
H. 464; 150 N. C. 312; 186 U. S. 257; 206 U. S. 1; 193
U. S. 54, and authorities supra. The courts were and
are open to complainant, and hence, it cannot be said
that there was no denial of due process or of equal pro-
tection.

J. T. STOKELY, and BANKHEAD & BANKHEAD, for ap-
pellee. The bill contains equity, for otherwise, the order
of the commission is final and conclusive, and complain-
ant will be deprived of judicial review.—134 U. S. 418;
169 U. S. 466; 154 U. S. 362; 209 U. S. 122; *L. & N. v.
City of Bessemer,* 108 Ala. 238; *City of Mobile v. Bien-
ville W. W. Co.,* 130 Ala. 379; *Port of Mobile v. L. & N.,*
84 Ala. 115. The equity of the bill being thus estab-
tablished, if its averments are sustained by the evidence,
complainant is entitled to relief. The lower court found,
and by its opinion, clearly established the fact that the
averments of the bill were clearly proven. The order
of the commission must be considered not only from the
public standpoint, but from the standpoint of the rail-
road company as well, and the expenditures thus in-
volved, and when the evidence is so considered, the
equities in favor of the company become intensified.—
224 U. S. 510, and authorities supra.

ANDERSON, J.—Article 12 of the Constitution of
1901, composed of sections 242-246, deals with railroads
and canals, and section 243 provides in part as follows:
"The power and authority of regulating railroad freight
and passenger tariffs, the locating and building of pas-
senger and freight depots, correcting abuses,   *   *   *
are hereby conferred upon the Legislature, whose duty
it shall be to pass laws," etc. The Legislature, availing

itself of this constitutional provision, created a railroad commission and enacted laws for the purpose of compelling obedience to the mandate of our organic law. Section 5543 of the Code of 1907 requires every railroad in this state, on the order of the railroad commission, to provide, construct, and maintain adequate depots and depot buildings for the accommodation of passengers and for receiving and handling freight, where public necessity demands it, and the revenue at such point will be sufficient to justify it. Section 5545 authorizes the railroad commission, when any two or more railroads enter any city or town, to require a union passenger depot when practicable, or when the necessities of the case in the judgment of the railroad commission demands it. It also authorizes the commission to require the different railroads to unite in the joint undertaking and expense of erecting, constructing, and maintaining such union passenger stations on such terms, regulations, provisions, and conditions as said railroad commission may prescribe, and provides a penalty for a default.

The object of the constitutional provisions and these legislative enactments was to give proper protection to the traveling public against inconvenient and inadequate depot facilities. "It was not expected that the Legislature should do more than pass laws to accomplish the ends in view. When this was done, its duty had been discharged. All laws are carried into execution by means of officers appointed for that purpose; some with more, others with less, but all must be clothed with power sufficient for the effectual execution of the law to be enforced. Legislative grants of power to the officers of the law to make rules and regulations which are to have the force and effect of laws are by no means uncommon in the history of our legislation."—*Georgia*

*R. Co. v. Smith,* 70 Ga. 694 (affirmed by the Supreme Court of the United States, 128 U. S. 174, 9 Sup. Ct. 47, 32 L. Ed. 377).

Our own court is in accord with the holding that the Legislature performs its function in creating the laws and can delegate the execution of same to officials legally selected for said purpose, and that the giving of said officials some latitude in the execution of same does not amount to the delegation of the authority to legislate. —*Whaley v. State,* 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499; *State v. McCarty,* 5 Ala. App. 212, 59 South. 543 (which was subsequently approved by this court in the denial of the writ of certiorari to review the holding of the Court of Appeals); *Ward v. State,* 154 Ala. 227, 45 South. 655; *Tallassee Co. v. Coms. Court,* 158 Ala. 263; 48 South. 354.

Indeed, the power of the Legislature to create a railroad or corporation commission, and through them to exercise its power of regulation over railroads, has been repeatedly sustained, subject to the limitations that they cannot be invested with strictly legislative or judicial powers, and that their power and proceedings must be within constitutional restrictions relating to due process of law, and equal protection of the laws, and that a state cannot authorize a railroad commission to regulate interstate commerce.

So a railroad commission legally constituted is an administrative body, and not legislative, or a court, although they do in some cases exercise some functions of a judicial character; nor are their decisions judgments in the ordinary sense of the term.—33 Cyc. 45 and cases cited in note. "In some cases the statutes give a right of appeal from the orders of railroad commissioners, or authorize the railroad company to bring an action against the commissioners to have the regulations, or-

ders, or finding vacated, with a right of appeal from
the judgment there rendered to the supreme appellate
court, and the orders of railroad commissioners may
also be reviewed on certiorari, but on appeal the court
will not revise an order of the commissioners unless
clearly erroneous. So also in an action or proceed-
ing to enforce an order of the railroad commissioners
the court may inquire into whether the commissioners
have exceeded their jurisdiction, or whether the order
of the commissioners is under the circumstances unrea-
sonable or unjust, and upon an affirmative finding in
either case refuse to enforce the order. Courts of equity
also have jurisdiction to prevent illegal or improper acts
on the part of the railroad commissioners, and so a
court of equity may enjoin proceedings or the enforce-
ment of orders of railroad commissioners when they are
acting under a statute which is unconstitutional, or in
making the order they have exceeded their jurisdiction,
or the order under the circumstances is unreasonable or
unjust; but in so doing the court cannot fix and deter-
mine what would be reasonable or enjoin the commis-
sioners from making a different order, and it is not a
violation of an injunction against putting in force a
certain schedule of rates for the commissioners to es-
tablish a different schedule."—33 Cyc. 52. We might
add that it would not necessarily violate the injunction
to readopt the same schedule under changed conditions,
if the new conditions justified it, though not justified
under the conditions existing when the injunction was
issued.

In some jurisdictions, including this one, the regula-
tion of questions relating to the establishment, loca-
tion, maintenance, removal, or abandonment of stations
is vested by statute to a greater or lesser extent in
boards of railroad commissioners whose orders are re-

viewable by the courts, but will not be reversed unless clearly erroneous.—33 Cyc. 144, and cases cited in note 38.

It may be that the Constitution does not in words mention a union depot or provide for the relocation of depots, but the right to locate means the right to relocate or change an existing location to meet the necessities or exigencies of business development, or changes in the tide and course of travel or business centers. The right to locate also carries the right to locate a passenger depot for different roads at the same place or point, if the public convenience requires it; the facilities required being in keeping with the financial ability of the road to maintain them, so that the same is not an unreasonable burden upon the railroads affected thereby. Certainly the statutes in question are not only sanctioned by the Constitution, but would no doubt be within the legislative province, if not expressly authorized by the Constitution, as the Constitution does not prohibit the exercise of police regulation over public carriers and the Legislature can do all things not prohibited by state or federal Constitutions.

As to whether or not so much of section 5545 as authorizes the commissioners to apportion the cost of erection and compel a joint ownership or cotenancy in the property regardless of the wishes of the interested roads is repugnant to the state and federal Constitutions, we are not called upon to decide, for the reason that, if it is, this part of it might be stricken and leave the rest of section 5545, or if the whole section was stricken, section 5543, while not mentioning union depots, authorizes the commissioners to require railroads to maintain adequate depots and adequate buildings for the accommodation of passengers, so if they are not properly located they are not adequate and do not prop-

erly accommodate passengers, and the right of the commission to require same necessarily carries with it the right to designate the location of same and the right to say to different roads entering the same town that they shall provide the same point for the reception and landing of their passengers and to maintain adequate depot facilities for the accommodation of said passengers, especially when said location is easily accessible to their respective tracks, as is shown to be the case as to the location in question.

We say that this complainant cannot complain of the unconstitutionality of so much of section 5545 as authorizes the commission to require a joint ownership of the depot property for the reason that the order of the commission contains no such requirement. There is nothing in the order (which will be set out by the Reporter) that makes it imperative upon this complainant to jointly bear the expense and burden of acquiring the lot and erecting the depot. Nor does it attempt to fix the title, interest, or ownership in the property by the respective railroads. The order designates the point of location and instructed the roads to agree among themselves as to the proportionate expense and ownership if they could, and provided that, if they could not do so, the Kansas City, Memphis & Birmingham Railroad will proceed to acquire the lot and report plans and specifications for the depot. It further provides that, after the depot is constructed by said Kansas City, Memphis & Birmingham Railroad, the other roads, including this complainant, shall enter and use the same upon such terms as may be agreed upon by all of said companies, and, in case of a failure to agree, then on such terms and conditions as the commission may order and direct. There is nothing whatever in said order that is imperative, as to this complainant, except that

[Railroad Commission v. Ala. North. Ry. Co.]

it should enter and use the depot after it is constructed
by the Kansas City, Memphis & Birmingham Company
in the event they can agree upon terms. If the depot
is never built, the complainant will not have to comply
with the order. If they cannot agree upon terms, the
complainant will not have to enter until the commission
makes another order, and just what that order will be
the complainant does not and cannot inform us. We
anticipate, however, that in the course of events, when
the depot is built and this complainant informs the com-
mission that it cannot enter and use the same for the
reason that it cannot agree upon terms with the Kansas
City, Memphis & Birmingham Company, that the com-
mission will either relieve it or make another order in-
structing a resort by the complainant to condemnation
proceedings which seems to be authorized by the Con-
stitution and statutes in proper cases and which pro-
vides for a judicial ascertainment of the rights and
damages between the owner and this complainant. If
for any reason the complainant cannot legally acquire
the right to enter the said depot, the commission will
doubtless not require or insist upon its doing something
that cannot be done under the law. We do not mean
to hold, however, that any part of said section 5545 is
unconstitutional, or that the commission cannot com-
pel a joint construction and ownership of a union depot.
—*State v. Minnesota Co.*, 80 Minn. 191, 83 N. W. 60, 89
Am. St. Rep. 514, Id., 186 U. S. 257, 22 Sup. Ct. 900, 46
L. Ed. 1151. We simply assume that if such was the
case the point would not be available to this complain-
ant, as it is not covered by the order of the commission.
In connection with the statutory authority of the com-
mission to require two or more railroads to enter and
use the same depot, we cite:—*Dewey v. Railroad Co.*,
142 N. C. 392, 55 S. E. 292; *Griffin v. Railroad Co.*, 150

N. C. 312, 64 S. E. 16; *Mayer v. Railroad Co.,* 109 Mass. 103. . Our own case of *N. C. & St. L. R. R. v. State,* 137 Ala. 439, 34 South. 401, declared that it was within the legislative competency to empower the railroad commissioners to locate stations and require the building of depots. It is true, the power was denied in this case because the statute, as it then existed, did not authorize the thing attempted; but the statute as it now appears in the Code of 1907 is much broader than the one considered in the *N. C. & St. L. R. R. Case, supra.*

So long as the commission acts within the rule above stated, its orders in exercising the police power of the state is not violative of the state or federal Constitutions as to condemning property without due process notwithstanding the railroad may lose the use of the old building or the use of the lot as a location for its passenger depot. It acquired the lot and erected the building with a full knowledge of and subject to the police power of the state. If the commission in making the order exceeded its jurisdiction, or the act under which it proceeds is unconstitutional, or the order is unreasonable or unjust, the courts are open to the railroad to prevent the enforcement of same. We have already held that the commission had the authority under the statute to make the order, and that the statute, so far as it relates to this complainant, is not unconstitutional, so the only remaining question to be decided is whether or not said order is unjust or unreasonable.

Presumptively it is reasonable, and the court will not overturn the finding of the commission unless it clearly appears that said order is unjust and unreasonable.

In determining this question the needs and accommodation of the public and the effect it will have upon the property rights of the railroad, while not the sole, are the paramount, questions for consideration. The

commission visited the town of Jasper and inspected the various points suggested for the location of depots as well as the old depots of the different roads. It is also a matter of common knowledge that for the traveling public generally, as distinguished from those domiciled at the town in question, a union depot is quite a convenience and saves the expense and trouble of transferring the passengers and their baggage. It also stands to reason that two or more railroads can construct and maintain jointly an adequate union depot cheaper than each of them can construct and maintain separate depots that would be comfortable and adequate. Especially should this be so as to this complainant, who admits that its present depot is totally inadequate and that it is necessary to construct a new one. Nor can we see how it could hurt this complainant's business to make it more convenient for passengers reaching Jasper over other roads to reach its depot and trains. There seems to be some conflict in the testimony of the Jasper witnesses as to the need for a union depot as well as to whether or not the location selected is the best one for such a depot. As a rule, the citizens of the town in which the depot is located are much less interested in a union depot than the traveling public passing through the town and who there transfer from one road to another. Unless there is an appreciable difference in the distance of the different depots from the center of the town, the natives can go to or return from one about as well as from the other as they start from Jasper and wind up at Jasper and are relieved of the same annoyance and tax of transferring that is suffered by those passing through the town. So, in the end, the locality has but little interest in the question as to whether or not there are separate depots or a single one, except

perhaps so far as the location thereof may effect real estat values in certain blocks or along certain streets.

It has been suggested, and the point seems to have been seriously considered by the trial court, that the order of the commission is nonenforceable because a part of a street is included in the location selected. If the right to do the thing is authorized by the Legislature, that might carry with it the right to close the street.—*Griffin v. Railroad Co.*, 150 N. C. 312, 64 S. E. 16. This point, however, need not be decided, for it is not available to this complainant, as that is a matter between the Kansas City, Memphis & Birmingham Railroad, and the public, and if the Kansas City, Memphis & Birmingham Railroad does not acquire a lot and erect the depot the order will amount to nothing in so far as it relates to this complainant.

The judgement of the city court is reversed, and one is here rendered dissolving the injunction and dismissing the bill of complaint.

Reversed and rendered.

DOWDELL, C. J., and MAYFIELD and DE GRAFFENRIED, JJ., concur.