[State, ex rel. Attorney General, v. Louisville & Nashvllle R. R. Co.]

charge is erroneous, are hereby overruled.—*Dawson v. State,* 71 South. 722; *Richardson v. State,* 68 Ala. 57.

The case is affirmed.

ANDERSON, C. J., and McCLELLAN, MAYFIELD, SOMERVILLE and GARDNER, JJ., concur.

SAYRE, J., not sitting.

MAYFIELD, J.—I concur, but wish to guard my concurrence against holding that the defendant's general bad character after the offense can ever be inquired into for any purpose. His character for truth and veracity may be shown, up to the time of the trial; but the evidence must be limited to that sole purpose, and this cannot be done by showing his general bad character, after the offense, though the general bad character, as a rule, tends to impeach, or go to the credibility of a witness.

# State, *ex rel.* Attorney General, *v.* Louisville & Nashville R. R. Co.

## Injunction.

(Decided May 11, 1916. Rehearing denied June 30, 1916. 72 South. 494.)

1. **Carriers; Regulations; Rates; Statutes.**—Acts 1907, p. 80, as amended by Acts 1907, p. 711, does not mention or attempt to provide special or preferential rates, but relates to regular or normal rates, and does not affect a voluntary, special or preferential rate.

2. **Same.**—Under Acts 1907, p. 80, the maximum rate fixed would prevail until it was changed by the Railroad Commission, under the authority of the amendatory act of 1907, p. 711.

3. **Same; Remedy; Injunction.**—Section 14½, Acts 1907, p. 40 (S. S.) does not authorize the Railroad Commission of its own motion to establish special rates, or to require the continuance of a special rate, but only to approve special rates submitted by a carrier, the carrier being authorized to withdraw them at will.

4. **Same; Special Rates.**—Under Acts 1907 (S. S.), p. 40, § 14½, in the case of a non emergency special rate, there must be an affirmative approval of the rate by the Railroad Commission as a condition precedent to the establishment of the rate.

5. **Same.**—Under Acts 1907, p. 40 (S. S.), a special rate not authorized by the Commission is discriminatory and unlawful, and the Attorney General had authority in the name of the state to enjoin such unlawful rate.

[State, ex rel. Attorney General, v. Louisville & Nashville R. R. Co.]

APPEAL from Etowah Chancery Court.

Heard before Hon. W. W. WHITESIDE.

Application by the State, on the relation of W. L. Martin, Attorney General, against the Louisville & Nashville Railroad Company for an injunction to restrain certain rate changes. From a decree denying the injunction, but reinstating it, pending appeal, petitioner appeals, and respondent files cross-appeal. Affirmed on main appeal, and reversed and rendering discharging the injunction on the cross-appeal.

The material allegation is that, in pursuance of section 1, Acts 1907, p. 713, respondent had heretofore filed with the Railroad Commission certain schedules, among others, showing its rates, fares, and charges for the transportation of property known as furnace or raw material, such schedule or tariffs being numbered as follows, and having been filed with and approved by the commission on the date set after the respective numbers: Here follows list of schedule. It is then alleged that the Railroad Commission on September 18, 1915, received what purported to be a tariff of the Louisville & Nashville Railroad Company, and which applies to furnace or raw material from stations on the Louisville & Nashville Railroad to other stations on said railroad, all of said points being within the state of Alabama, and which tariff canceled former tariffs heretofore filed, said tariff stating on its face that it is effective October 1, 1915, and purporting to change the rate which had heretofore been filed with and approved by the Railroad Commission. The result of the proposed tariff is to advance rates on the material set out in the above table according to the same measure and by the same amount; the only difference being that the tariff proposed applies to localities different from those formerly proposed. The bill seeks to restrain these rates from being put in operation until they have been submitted to and approved by said Railroad Commission.

W. L. MARTIN, Attorney General, and PERRY W. TURNER, Assistant Attorney General, for the State. HENRY L. STONE, W. A. COLSTON, JONES, FOSTER & FIELD, and DORTCH, MARTIN & ALLEN, for appellee.

ANDERSON, C. J.—(1, 2) The rate that respondent canceled and the one it seeks to put in is what is termed a special or industrial rate, and is therefore a preferential rate, as distin-

guished from the regular rate on the articles or commodities involved. A regular rate cannot be a special or preferential rate, and a special or preferential rate cannot be a regular rate; the terms are incongruous. Act Feb. 9, 1907, p. 80, fixed the maximum rate on intrastate freight as being the rate in force on January 1, 1907. This act was amended or modified by a subsequent act (page 711) so as to give the Railroad Commission the authority to change the rate, but the maximum rate as fixed by the first act would, of course, prevail until it was changed by the Railroad Commission, under the authority of the subsequent act. These acts, however, deal with regular rates, do not recognize, mention, or attempt to provide, authorize, or regulate special or preferential rates, and the Legislature, being cognizant of this fact, made special provision for special or preferential rates by incorporating section 14½ in Act Nov. 23, 1907, S. S. p. 40. Said section reads as follows, to wit:

"Sec. 14½. The Railroad Commission shall have the power and is hereby authorized upon its own motion, or upon the written application of any common carrier or railroad corporation, and under any rule which it may prescribe, to permit from time to time such common carrier or railroad corporation to establish any special rate or rates for the transportation of specific commodities in car loads from specified points, or within specified zones, or distances in the plants or points of destination where are located the points of any person, firm or corporation who is now or may hereafter be engaged in any industrial enterprise in this state for the purpose of encouraging the establishment or aiding in the development or continued and successful operations of such industrial enterprise: Provided that any special rate or rates so established for any particular industrial enterprise shall apply and be given all persons, firms and corporations engaged in the same enterprise within said zone or distance: And provided, further, that such special rates shall first be approved by the commission and be published as it may direct, and that a full, true and correct statement in writing of such special rate or rates, in each instance, be first filed with said commission, together with a sworn copy of any special contract made with the shipper with respect to such special rate, before the same shall go into effect. And the said commission may at any time revoke such permission and any special rate or rates established thereunder. Any rate or rates so established, after compliance with

the provisions hereinabove prescribed, shall be the lawful rates for the service performed, and shall not be construed to be an unjust or unlawful discrimination. When circumstances require a reduction in any rate or rates on less than statutory notice in order to permit an emergency to be met, the Railroad Commission, or, if the commission be not in session, the secretary of the commission, may, upon the written application of the carriers, and for good reasons shown, authorize such carriers to make such rate or rates effective on less than the statutory notice, provided a copy of the publication containing such rate or rates be filed with the commission, and provided, further, that when such authority is granted by the secretary the rate or rates so authorized shall be temporary and shall continue effective only until the next regular meeting of the commission, which may approve, revoke or modify the same."

(3, 4) We are disposed to adopt the contention of respondent as to the construction of said section, the same being the interpretation of the chancery court and of the Railroad Commission; that is, the said statute in question does not authorize the commission of its own motion to establish special rates, but simply permits the said commission to approve such rates by the carrier under certain conditions, and the commission has no greater authority to require the continuance of the rate than it had to put it into effect. It would therefore seem that the carrier can withdraw said special rate at will, but cannot put the new rate into effect except upon the approval of the commission and after otherwise complying with the statute in question. While the commission has no right to voluntarily put special rates into effect, or to prevent the carrier from withdrawing same after being in operation, it has the authority to revoke or discontinue said special rates with or without the action or consent of the carrier, and no special rate can be put into effect until it is first approved by the commission. We therefore hold, as did the chancery court, that the respondent had the right, under the law, to cancel or withdraw the then existing special rate without the consent and approval of the commission, and could not be legally restrained by injunction from doing so. But the respondent had no right to change the special rate, that is, cancel the old one and establish a new one, without first applying to the commission and getting its approval of the said new special rate as a condition precedent to making it effectual. The statute contemplates

a formal, affirmative approval by the commission, as a body, at some lawful meeting, and that some memorial be made of same upon the records or minutes of the commission.\ The Railroad Commission (now Public Service Commission) is an important arm of the government, and the law contemplates that its acts and orders should be characterized by a certain degree of dignity and formality, and they should be disclosed by and preserved upon the records of the department. Not only is this contemplated by the law creating the commission and defining its general duties and powers, but the very statute in question (section 14½) contemplates the affirmative approval of the commission as a condition precedent to putting into effect the rate in question, as it expressly excepts emergency special rates when the commission is not in session, by applying to the secretary, but provides that the same shall be temporary only and until the next regular meeting, which may revoke, approve, or modify same; thus showing that when it came to nonemergency special rates the Legislature contemplated an affirmative approval of same at some formal meeting of the commission, as a condition precedent to the establishment of same, and which the respondent had not procured and could not well get before the date fixed for the going into effect of the special rate in question. This was the legislative contemplation, as expressed in section 14½ of the statute, and regardless of the previous methods of dealing with similar questions by the commission.

(5) It may be true that, if the respondent sees fit to cancel the old special rate before the Public Service Commission formally approves the new special rates, it can only operate under the regular rates, which are higher than the special rate proposed, and that the commission will necessarily approve said special rate. But with this we are not concerned, and it is not for this respondent to decide what is or will be best for the sovereign, but to obey its laws so long as the same may exist. (The special rate proposed is discriminatory and unlawful,) and can only be made legal by first complying with the statute, and so long as the respondent was threatening to put in an unlawful rate the public was affected generally, as distinguished from a few individuals or corporations, and the Attorney General had the authority, in the name of the state, to enjoin this unlawful rate. We think that the chancery court properly modified the injunction so as to authorize this respondent to cancel the existing rate,

[State, ex rel. Attorney General, v. Louisville & Nashville R. R. Co.]

but erred in reinstating same in this respect pending the appeal. We also hold that the chancery court properly retained the injunction, in so far as it restrains this respondent from putting into effect the new proposed special rate until it first got the approval of the Public Service Commission as required by the statute (section 14½ of the act).

The decree of the chancery court is affirmed upon the direct appeal, and is affirmed upon the cross-appeal, except in so far as it reinstated the injunction restraining the respondent from canceling the old special rate, and in this particular reversed, and a decree is here rendered modifying the injunction so as to allow the respondent to cancel said old special rate.

Affirmed on direct appeal. Affirmed in part on cross-appeal, and reversed and rendered in part.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.

## ON REHEARING.

ANDERSON, C. J.—We will first reply to the appellant's reply brief upon rehearing, as it states and argues more aptly and concisely the one point of the decision in which the state is interested on rehearing; the other questions having been decided in its favor. This point is the correctness vel non of the holding to the effect that Act Feb. 9, 1907, p. 80, in fixing the maximum rates as those then existing, related to the regular or normal rates upon the commodities here involved, and not the voluntary, preferential, or special rate that may have existed at the time of the enactment of the above-mentioned statute. If, as held in the former opinion, this statute did not apply to the rate in question, then the carrier had the right to cancel same, but could not adopt a new preferential rate except with the approval of the Public Service Commission, as provided by section 14½ of the later act. On the other hand, if the first-mentioned act applied to the preferential rate in question, conceding that it was in force at the time of the enactment of this statute, then the carrier had no right to cancel same except with the consent of the Public Service Commission, as authorized by Acts 1907, p. 711.

We are still of the opinion that Acts 1907, p. 80, in fixing the rates then existing as the maximum rate, dealt with the existing, regular, or normal rate, and not a mere voluntary, preferential rate that may have existed at that time. It may be true that the

[State, ex rel. Attorney General, v. Louisville & Nashville R. R. Co.]

commodities in question may not have been embraced in the group of specified commodities, but there is an agreement, on page 58 of the record, to the effect that there was a normal or regular rate on these commodities which operated thereon except when the preferential rate was given; that the normal rate applied to these commodities in all cases not covered by the preferential rate and governed all shipments included in the preferential rate whenever it was not in force or was withdrawn. We cannot even imagine that the Legislature had in mind the fixing of two separate and distinct maximum rates on the same articles and intended to compel a discrimination in favor of a certain class of shippers as against the public generally. Not only was this not intended for the reason that the Legislature gave the Railroad Commission absolute control over all regular rates by the subsequent act of 1907 (page 711), and then made a special provision by section 14½ for preferential or discriminatory rates to be voluntarily given by the carrier subject to the approval of the Railroad Commission. We are not concerned with the result of this holding, or whether or not the regular rate is greatly in excess of the preferential rate in question, as we must adhere to the manifest intent of the Legislature. It would seem, however, that the Public Service Commission has an absolute control of all regular or normal rates under the act (page 711), and can protect the public generally against extortion or oppression by regulating the regular rates, but it has no power to compel a discriminatory rate in favor of a chosen few at the expense of the general public. If the carriers desire to discriminate by giving certain industries a special rate, and the Public Service Commission deems this proper it can, under section 14½, permit such a preferential rate, but preferential rates are voluntary, and are not compelled by the statute directly or through the Public Service Commission.

Much has been said in the original brief of the Attorney General as to the attitude of this appellee and its counsel in reference to the interpretation of Acts 1907, p. 80, and it is suggested that the appellee is estopped from contending that the said act does not apply to these preferential rates. Such a thing as an estoppel was not suggested by the pleading or the original brief of counsel, and it is tardily suggested at the present time; but we may concede, without deciding, that this point can now be considered, and that appellee's counsel took the position sug-

[Caldwell, et al. v. Caldwell, et al.]

gested in the case before District Judge Jones (though the report
of the case does not disclose the position assumed by counsel), and
that the decision of Judge Jones was that the act did apply to
these rates, and that the matter there ended. Then the appellant
can gain nothing by this decision, for, while it held that the stat-
ute did apply to preferential rates the said act was nullified be-
cause confiscatory. Therefore, if the state relies on this holding
as an estoppel, it must accept it in its entirety and under said
holding the act is unconstitutional. We do not agree, however,
with the holding of Judge Jones as reported (*L. & N. R. R. Co. v.
Railroad Commission* [D. C.] 196 Fed. 831), but prefer holding
that the statute is constitutional and does not apply to what was
then a voluntary preferential rate as distinguished from the reg-
ular, normal rates. This holding is not only the sound and logi-
cal interpretation of the statute, but, we are informed since the
preparation of the original opinion, is the same one contended
for by the state's able array of lawyers for years, and which they
induced the United States Court to give the statute in an opinion
by Judges Shelby and Grubb.—Id. (D. C. 208 Fed. 35. See, also,
*South & North R. R. v. Railroad Commission of Alabama* (D. C.)
210 Fed. 465. It would therefore seem that the construction we
have given the statute is the one heretofore contended for by the
state and placed upon it at its instance by Judges Shelby and
Grubb, notwithstanding Judge Jones took a different view of
the matter, and in doing so held that said statute was unconstitu-
tional.