(97 South. 289)

SOUTHERN RY. CO. et al. v. ALABAMA PUBLIC SERVICE COMMISSION.

(3 Div. 589.)

(Supreme Court of Alabama. June 7, 1923. Rehearing Denied June 28, 1923.)

Carriers ⬦12(1)—Fixing preferential industrial rates held beyond power of Commission.

Where iron and steel manufacturers' "assembling rates," which were special preferential industrial rates, had been advanced by general order during the period of government control, *held*, that the Public Service Commission, after the expiration of that period, although having authority, under federal Transportation Act, § 208a, to abolish such rates altogether, could not, without agreement of the carriers as well as shippers, set up in their stead other rates, not general, but applicable only to the "furnace raw material traffic," in view of Act Nov. 23, 1907 (Acts Sp. Sess. 1907, p. 40) § 14½, as reenacted by Alabama Transportation Act of 1920, § 13.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Appeal by the Southern Railway Company and others to the circuit court, in equity, Montgomery county, from an order of the Alabama Public Service Commission in a proceeding by the Alabama Company and others against the Southern Railway Company and others. From a decree affirming the order of the Commission, defendants appeal. Reversed and remanded.

Claudian B. Northrop and M. G. Roberts, both of Washington, D. C., W. R. C. Cocke and John T. Stokely, both of Birmingham, Steiner, Crum & Weil, of Montgomery, George W. Jones and E. Perry Thomas, both of Montgomery, and Nelson W. Proctor, of Louisville, Ky., for appellants.

The Public Service Commission has no jurisdiction to initiate special industrial rates. State v. L. & N. R. Co., 197 Ala. 203, 72 South. 494; Lake Shore, etc., Co. v. Smith, 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858; Beardsley v. N. Y., L. E. & W., 162 N. Y. 230, 56 N. E. 488; Com. v. A. C. L., 106 Va. 61, 55 S. E. 572, 7 L. R. A. (N. S.) 1086, 117 Am. St. Rep. 983, 9 Ann. Cas. 1124; State v. Great Northern, 17 N. D. 370, 116 N. W. 89; State v. Bonneval, 128 La. 902, 55 South. 569, Ann. Cas. 1912C, 837; C., R. I. & P. R. Co. v. Ketchum (D. C.) 212 Fed. 986. Am. Rep. R. R. Com. Ala. 1911–12, p. 36; Id. 1915–16, pp. 71, 99, 167, 168; Acts 1907 (S. S.) p. 40, § 14½; Acts 1920, p. 94, § 13; 41 U. S. Stat. 464, § 208; Robertson v. Downing, 127 U. S. 607, 8 Sup. Ct. 1328, 32 L. Ed. 269; U. S. v. Hermanos, etc., 209 U. S. 337, 28 Sup. Ct. 532, 52 L. Ed. 821.

Harwell G. Davis, Atty. Gen., Hugh White, Asst. Atty. Gen., J. J. Mayfield, of Montgomery, and O. E. Harrison, of Washington, D. C., for appellee.

Whether a rate is unduly preferential or discriminatory is a question of fact, not of law, and within the province of the Commission to determine. T. & P. v. I. C. C., 162 U. S. 197, 16 Sup. Ct. 666, 40 L. Ed. 940; C., N. O. & T. P. v. I. C. C., 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935; I. C. C. v. Ala. Mid. R., 168 U. S. 144, 18 Sup. Ct. 45, 42 L. Ed. 414; L. & N. R. Co. v. Behlmer, 175 U. S. 648, 20 Sup. Ct. 209, 44 L. Ed. 309; N. Y., N. H. & H. R. Co. v. I. C. C., 200 U. S. 361, 26 Sup. Ct. 272, 50 L. Ed. 515; Penna. Co. v. U. S., 236 U. S. 351, 35 Sup. Ct. 370, 59 L. Ed. 616; B. & O. v. Pitcairn Coal Co., 215 U. S. 485, 30 Sup. Ct. 164, 54 L. Ed. 292. Robinson v. B. & O. R. Co., 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288; Morrisdale Coal Co. v. Penna. Co., 230 U. S. 304, 33 Sup. Ct. 938, 57 L. Ed. 1494; Mitchell v. Penna. Co., 230 U. S. 247, 33 Sup. Ct. 916, 57 L. Ed. 1472; Penna. Co. v. Int. Coal Min. Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446, Ann. Cas. 1915A, 315. The rates in question are not preferential or special industrial rates, within the purview of Acts Sp. Sess. 1907, p. 40, § 14½, but are rates subject to be changed by the commission. Code 1907, §§ 5668, 5651, 5676 et seq.; 41 U. S. Stat. 456; 197 Ala. 203, 72 South. 494; L. & N. R. Co. v. Fulgham, 91 Ala. 555, 8 South. 803; Anniston Mfg. Co. v. Sou. Ry., 145 Ala. 351, 40 South. 965; L. & N. R. Co. v. Com., 108 Ky. 628, 57 S. W. 508; Hoover v. Penna. Co., 156 Pa.

---

⬦For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

220, 27 Atl. 282, 22 L. R. A. 263, 36 Am. St. Rep. 43; I. C. C. v. B. & O., 145 U. S. 263, 12 Sup. Ct. 844, 36 L. Ed. 699.

SAYRE, J. This proceeding had its origin in a petition addressed to the Alabama Public Service Commission, filed May 21, 1920, by the Alabama Company and other companies engaged in the production of pig iron and various iron and steel products at plants within and contiguous to what is known as the Birmingham district, in this state. This petition, to employ the language therein found, concerned the reasonableness and legal propriety of advanced rates on coal, coke, ore, and limestone, constituting raw material required and used by petitioners in the manufacture of pig iron. The traffic affected by the rates in question is exclusively intrastate. The petition showed that "for many years prior to August 15, 1916, the assembling rates on furnace raw materials in the state of Alabama had remained constant," such rates being "constructed on a zone basis;" that on the date mentioned these rates were advanced 5 cents per ton, and again, on July 20, 1917, "the rates were increased 5 cents a ton on each of these furnace raw materials," and that "notwithstanding the great advances in the rates, as above shown, further enormous advances, effective June 25, 1918, were made under authority claimed to have been granted under General Order No. 28 of the United States Railroad Administration." Petitioners show to the Commission the history of the development of their industry in this state, the present conditions under which their operations are conducted, conclude that "the said advanced rates and charges are intrinsically, in and of themselves, unjust, unreasonable and excessive, to the extent that they exceed the rates in effect immediately prior thereto," and pray, in effect, that the Commission restore the rates in effect immediately prior to the advance of June 25, 1918. The Commission, August 18, 1921, referred to the advances of August 15, 1916, and July 20, 1917, saying that "each of these advances was initiated by the carriers and approved by the Commission pursuant to the law of Alabama," and clearly evinced its recognition of the true character and legal status of the rates ordered on those dates by adding:

"The special industrial rates that were in effect preceding the advance under General Order No. 28 are not in issue."

Further it said:

"The function of this Commission is to determine whether the rates as so advanced [speaking, evidently, of the advance in pursuance of General Order No. 28] are just and reasonable, and to prescribe what it may find to be just and reasonable rates for the future."

Stating its opinion that "the situation and the service incident to this transportation in the Birmingham district is unique and without a parallel elsewhere to be found, * * * and that these features clearly differentiate the service rendered complainants from any similar service rendered the public generally," though no facts were stated as a basis for this conclusion, the Commission made an order purporting to grant the petition, but in fact establishing new rates on coal, coke, ore, and limestone, "to be applied in the future to this furnace raw material traffic," these rates being, as to ore and limestone, less than the rates that resulted from General Order No. 28, but somewhat in excess of the rates which had been established by the Commission previous to General Order No. 28, and, as to coal and coke, in excess of any previous rates. On appeal to the equity side of the circuit court the order of the Public Service Commission was affirmed. From the decree of the circuit court the defendant railroad companies have appealed.

In his opinion the circuit judge, after referring to the decision of this court in State ex rel. Attorney General v. Louisville & Nashville R. R. Co., 197 Ala. 203, 72 South. 494, correctly stated:

"The decisive legal question in this case is, Are the rates complained of special preferential industrial rates within the purview and sanction of section 14½ of the act of November 23, 1907 (page 40), as re-enacted in section 13 of the Alabama Transportation Act of 1920?"

And the court held that the rates challenged were not special preferential industrial rates within the meaning of section 14½, and that the complaining furnace companies had not asked for preferential rates, but had simply invoked the general powers of the Alabama Public Service Commission to find and prescribe reasonable rates. In the circuit court the order of the Public Service Commission was affirmed.

It is entirely clear on the language of the prayer for relief shown by the petition that petitioners sought to be relieved of the burden of the advance in rates made effective by General Order No. 28, and upon the language of its order made in the premises it is likewise clear that the Commission did not respond to the special prayer of the petition, but, proceeding under color of its general power to fix rates, ordered an entirely new schedule of rates. In the circuit court it was ruled that the rates in effect at the time of the filing of the petition were not such rates as fall within the purview of Acts Sp. Sess. 1907, p. 40, § 14½, for the reason, in brief, that they were not established in accordance with the section, but were imposed on the carriers by the United States Railroad Administration, without consultation with the Alabama Public Service Commission, in the exercise of paramount war powers temporarily conferred on the Administra-

tion by the Congress, and hence it appears to have been held that the advanced rates ordered by the Railroad Administration were temporary, limited to the emergency out of which they arose, and that the Commission, in the exercise of its general powers, had authority to abolish prevailing rates and set up a new schedule of rates. Our judgment is that in the conclusion, orders, and decrees noted the Commission and the court were in error.

From the language of the Commission and the evidence in the record it appears without dispute that the rates to furnace companies on the commodities in question prevailing prior to General Order No. 28, were in law and in fact special perferential industrial rates. General Order No. 28 advanced all then existing rates alike by 25 per cent. Conceding that the furnace rates in effect at the time of the petition filed in this cause were not the product solely of a proceeding under section 14½, the petitioning companies nevertheless enjoyed rates, however burdensome in themselves, lower than those open to the general public, and this advantage resulted from the fact that, prior to the flat advance put into effect by General Order No. 28, a difference had been permitted for their benefit. If these rates in the beginning may have been established pursuant to a statutory authority antedating section 14½, still they were lawful rates, and in fact they were preferential, and, after the enactment of section 14½, it was beyond the power of the Commission, without the agreement of the parties, to set up new preferential rates. Nor were they temporary rates; that is, their life was not limited to any fixed period, nor to the period of federal control. True, the Federal Control Act was "expressly declared to be emergency legislation enacted to meet conditions growing out of war," but the federal Transportation Act (41 Stat. 456), while providing that the railroads should be returned to their owners and federal control should cease on March 1, 1920, provided also (section 208a) that all rates then in effect should continue in force until September 1, 1920, and thereafter until changed by state or federal authority. Thereafter these preferential intrastate rates might have been abolished by the Public Service Commission, and thus all shippers alike relegated to the same rates, viz. the prevailing general rates open to all shippers; but when it undertook to set up in their stead other rates, not general, but applicable only to the "furnace raw

material traffic," it exceeded its powers, as this court held in State ex rel. Attorney General v. Louisville & Nashville R. R. Co., supra. There is no need to repeat what was said in that case.

Nor can the order of the Public Service Commission be justified on the theory that it was empowered to classify the services rendered to shippers on various considerations of supposed public or private convenience or other advantage. Construing the act "to further regulate railroads," etc., approved November 23, 1907, and section 14½ thereof, this court, in the case to which we have referred, ruled that the suggested method of rate regulation, that is, by classifying shipments of the same freights moving at the same time in the same direction between the same points in favor of a limited class of shippers, was precisely the thing the statute prohibited unless it be done in the manner prescribed by section 14½, that is, voluntarily by the carrier, and with the approval of the Commission, and that section, with this accretion of judicial interpretation, has, since the petition filed in this cause, been reenacted in section 13 of the "Alabama Transportation Act of 1920." Acts 1920, p. 94. We do not understand that the decision denied to the Commission, in the exercise of its general power to establish rates, the right to classify traffic according to incidents affecting every one applying for transportation, but that it denied to the Commission the power, after fixing reasonable general rates, "to compel a discriminatory rate in favor of a chosen few." The act of the Legislature and the decision in State ex rel. Attorney General v. Louisville & Nashville R. R. Co. seem to be in harmony with the theory of the decisions of the Supreme Court of the United States in Lake Shore Railway Co. v. Smith, 173 U. S. 684, 19 Sup. Ct. 565, 43 L. Ed. 858, and Pennsylvania Railroad Co. v. Towers, 245 U. S. 6, 38 Sup. Ct. 2, 62 L. Ed. 117, L. R. A. 1918C, 475. There being, then, no question as to the constitutional authority of the Legislature to pass the act (section 14½; section 13), we have no choice in the matter of interpretation. The argument as to that is concluded. The will of the Legislature, if ever it was in doubt, has now been made clear. Inquiry into its wisdom is without the jurisdiction of the court.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.