(107 So. 71)

## ALABAMA POWER CO. v. ALABAMA PUBLIC SERVICE COMMISSION.
### (3 Div. 686.)

(Supreme Court of Alabama.   Nov. 27, 1925. Rehearing Denied Jan. 21, 1926.)

1. **Public service commissions** ☞27—**Order of Public Service Commission reviewable on appeal, and annulled when unreasonable, in excess of jurisdiction, or unconstitutional.**

An order of the Public Service Commission may be reviewed on appeal, and will be set aside and annulled when unreasonable and unjust, in excess of statutory jurisdiction, or unconstitutional.

2. **Public service commissions** ☞32, 33—**On appeal from order of Public Service Commission, trial is de novo, and burden is on appellant to prove order to be incorrect.**

Under Code 1923, § 9835, on appeal to the circuit court, from an order of the Public Service Commission, the trial is de novo, and, under section 9836, the order appealed from is presumed to be just and correct, and burden is on appellant to prove the contrary by clear and satisfactory evidence.

3. **Electricity** ☞11—**Order requiring classification of X-ray machine users as lighting customers held not unreasonable.**

On appeal from an order of the Public Service Commission, compelling defendant power company to classify users of X-ray machines as lighting customers instead of retail power customers, evidence *held* not to so clearly establish contentions that special facilities were required for X-ray machine service or that a "standing, ready to serve" charge was necessary or fair, as to make classification of commission unreasonable.

4. **Public service commissions** ☞32—**Supreme Court cannot make classifications or rates, but can only pass on reasonableness of such action by Public Service Commission.**

Supreme Court is without authority to make classifications or rates for power companies, but can only pass judgment on legality and reasonableness of such action by Public Service Commission, and nullify or sustain that action accordingly.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Appeal by the Alabama Power Company to the circuit court, in equity, from an order of the Alabama Public Service Commission. From a decree affirming the order of the commission, defendant appeals. Submitted and decided under Supreme Court Rule 46. Order affirmed.

The order of the commission appealed from, dated July 7, 1922, directs said power company thereafter to classify the users or operators of X-ray machines as *lighting customers*, and to charge them at the rates then in effect for such customers—X-ray customers having been theretofore classified by the company as *retail power customers*, and required to pay the rates and charges established for that class of customers.

The rates and charges authorized under the two classifications in question are shown by the following schedules now in force:

First—Retail Power Rate (Service Classification H).

"Demand charge: $1.50 per month per kilowatt of demand; plus

"Energy charge: 3 cents per K. W. H. for the first 1,000 K. W. H. consumed per month; plus 2 cents per K. W. H. for the next 4,000 K. W. H. consumed per month; plus 1 cent per K. W. H. for the next 15,000 K. W. H. consumed per month; plus 9 cents per K. W. H. for the next 30,000 K. W. H. consumed per month.

"Minimum. In consideration of the readiness of the company to furnish such service a monthly minimum equal to the demand charge will be charged and in no case will the minimum charge be for less than one (1) kilowatt."

Second—Residential and Commercial Lighting Rate (Service Classification A).

"10 cents per K. W. H. for the first 30 K. W. H. consumed per month; plus 8 cents per K. W. H. for the next 170 K. W. H. consumed per month; plus 7 cents per K. W. H. for the next 300 K. W. H. consumed per month; plus 6 cents per K. W. H. for the next 350 K. W. H. consumed per month; plus 5 cents per K. W. H. for all over 850 K. W. H. consumed per month.

"Minimum. In consideration of the readiness of the company to furnish such service, a monthly minimum of one dollar ($1.00) will be charged."

The practical operation of these two rates, as applied to X-ray machine customers, appears to be sustantially as follows:

(1) X-ray machines consume a very small amount of power, except in rare cases, less than $1 per month under either rating. These machines range in power capacity between one and ten kilowatts, rarely more, so that, under the retail power rate, the operator would pay monthly a consumption charge of $1 or very much less, but would also pay monthly a "ready to serve" charge of $1.50 to $15, or more, according to the capacity of

---

the machine expressed in kilowatts, in addition to, and regardless of, the amount paid for power actually consumed.

(2) Under the residential and commercial lighting rate, regardless of the capacity of the machine, the operator would pay, except in a few rare instances perhaps, only the minimum charge of $1.

Martin, Thompson, Foster & Turner, of Birmingham, and Jones & Thomas and J. J. Mayfield, all of Montgomery, for appellant.

An order of the commission may be set aside when it is unreasonable and unjust, exceeds the authority of the commission, or is unconstitutional. Code 1923, §§ 9835, 9836; Ala. Pub. Serv. Comm. v. L. & N., 206 Ala. 326, 89 So. 524; A. G. S. v. Comm., 210 Ala. 151, 97 So. 226; Sou. Ry. v. Ala. Pub. Serv. Comm., 210 Ala. 105, 97 So. 289. The testimony was taken by deposition, in an equity case, and no presumption will be indulged in favor of the decree. Code 1923, §§ 10276, 6574; Wade v. Miller, 208 Ala. 264, 93 So. 905; Hodge v. Joy, 207 Ala. 198, 92 So. 171; Johnston v. Fondren, 204 Ala. 656, 87 So. 94. Electric service for X-ray machines should be classed as power service. Golseth v. Western Elec. Co., P. U. R. 1920F, 806; Maires v. Flatbush Gas Co., P. U. R. 1920E, 930. A public utility must treat each customer fairly and without unjust discrimination. An order by the commission causing such discrimination is void. Snell v. Clinton Co., 196 Ill. 626, 63 N. E. 1082, 58 L. R. A. 284, 89 Am. St. Rep. 341; I. C. C. v. C., R. I. & P., 218 U. S. 88, 30 S. Ct. 651, 54 L. Ed. 946; Lake Shore v. Smith, 173 U. S. 684, 19 S. Ct. 565, 43 L. Ed. 858; In re Gardner, 84 Kan. 264, 113 P. 1054, 33 L. R. A. (N. S.) 956; So. Ry. v. Ala. Pub. Serv. Comm., 210 Ala. 105, 97 So. 289; 6 R. C. L. 373; 2 Wyman, on P. S. C. 1092.

Harwell G. Davis, Atty. Gen., and Ball & Beckwith, of Montgomery, for appellee.

All legal intendments are with the orders of the commission, and its orders will be upheld, unless their invalidity is made to appear. A. G. S. v. Ala. Pub. Serv. Comm., 210 Ala. 151, 97 So. 226; R. R. Comm. v. L. & N., 197 Ala. 161, 72 So. 397. The courts will not examine the evidence on which the order is based, further than to determine whether there was substantial evidence to sustain the order. I. C. C. v. U. P., 222 U. S. 541, 32 S. Ct. 108, 56 L. Ed. 308.

SOMERVILLE, J. [1] An order of the Public Service Commission may be reviewed on appeal, and it will be set aside and annulled when the order is unreasonable and unjust, or when it is in excess of the statutory jurisdiction, or when it is unconstitutional. R. R. Commission v. Ala. North. Ry., 182 Ala. 357, 62 So. 749; Commission v. L. &

N. R. Co., 206 Ala. 326, 89 So. 524; So. Ry. Co. v. Commission, 210 Ala. 105, 97 So. 289; A. G. S. R. Co. v. Commission, 210 Ala. 151, 97 So. 226.

[2] On appeal to the circuit court, the trial is de novo (Code, § 9835), and the order appealed from is "presumed * * * to be just, reasonable and correct, and the burden shall be on the party appealing to prove the contrary by clear and satisfactory evidence." Code, § 9836; A. G. S. R. Co. v. Commission, supra.

The power company says and insists that the evidence shows without dispute that, to classify the X-ray user as a lighting customer rather than a retail power customer is unreasonable, in that it puts him into a class to which he is less analogous, both as to the energy consumed by him and as to the facilities supplied and the service performed for him by the company, as well as in the use to which he puts the current, and the manner in which he uses it; and in that such classification results in a rate for the X-ray user that, on account of the small amount of energy consumed by him per month, in the face of the size of his demand, does not afford a fair return to the company upon the investment necessary for standing ready to meet that demand, even according to the standards as fixed by the commission itself, in the rates prescribed for both lighting consumers and retail power consumers; and in that such classification results in a rate that is unduly preferential and unjustly discriminatory in favor of the X-ray user and against all other classes of customers.

Apart from the question of the technical propriety of the classification complained of, which we think is of minor importance, appellant's contention rests upon two leading issues of fact: (1) The comparative cost to the company of specially required facilities supplied by it for X-ray machine service, including special service wires and transformers; and (2) the alleged necessity and cost of "standing ready to serve" with an extra amount of power approximately equal to the watt capacity of the machine, however little of that power may be actually used, and however infrequently it may be called into service.

[3] So far as the first stated issue is concerned, while the company's expert witnesses testify that in their opinion the service for X-ray machines requires substantially larger wires, and a special and larger transformer for each machine, making a theoretical case for the company's contention, yet the evidence indicates that, as a practical proposition, such special equipment is not necessary, and for the most part has not been actually supplied. Indeed, it is shown to have been supplied in only one instance among the company's 27 X-ray customers; and Dr. Boswell testified that his four machines in the Bell building in

Montgomery were operated without any separate transformers. A comprehensive survey of the evidence does not show any adequate support for this branch of the company's contention.

The second issue—the question of the fairness and propriety of imposing upon X-ray machine customers a "ready to serve" charge of $1.50 a month for each kilowatt of the machine's rated capacity—involves several subsidiary postulates: (1) That the machine, when in operation, demands and uses power equal to its full rated capacity; (2) that, in the service of such machines, relatively few in number and widely separated, there is no "diversity element" as there is in the case of lighting customers, meaning that in the latter case the total amount of lighting *capacity* provided may be adequately served by a supply of equipment and ready power only one-third as great, that being the maximum average demand *at any given time;* and hence (3) that it is necessary to keep the full amount of the X-ray machine's rated capacity ready for its service at all times; and (4) that this involves an operating expense not compensated for by the returns, at the lighting rates, from the small amounts of energy actually consumed.

If these several postulates were clearly established, it would of course follow that the lighting schedule for X-ray machine customers would be unreasonable, because not compensatory, and unjust and discriminatory, because it would impose upon other customers the burden of carrying, by distribution, the company's loss from its X-ray machine service; the equitable distribution of operating costs among the different classes served being the true basis for classification and rate-fixing in public utility service. 2 Wyman on Public Service Corporations, 1094, § 1235.

On these issues much testimony was offered on behalf of the company, and here again its contentions are supported by the opinions of expert witnesses, but in large measure contradicted by practical experience and concrete example. From all of this evidence, much of which is of a technical character, we are unable to say that these contentions are so well supported and established as to demonstrate clearly the unreasonableness or unfairness of the ruling and order of the commission with respect to the classification, rates, and service here in question.

[4] As we have already observed, the technical accuracy of the classification complained of is not a matter of controlling importance. Our judgment is that the X-ray machine is not a power machine in the ordinary sense, nor is it a lighting device in the ordinary sense, though it has features analogous to both. But this court is without authority to make classifications or rates; it can only pass judgment upon the legality and reasonableness of the action of the commis-

sion in that behalf, and nullify or sustain that action accordingly.

Counsel for the company cite the opinion and conclusions of the North Dakota Commission in the case of Golseth v. Western Electric Co., P. U. R. 1920F, 806, which presented the same controversy as here, with a discussion of substantially the same issues of fact. In that case the commission held that—

"The service for motors used in operating X-ray machines shall be classed as power service, and shall pay the power rates for such service, including the regular minimum monthly service charge based on the number of horse power of connected load."

We do not know what was the character and strength of the evidence before the North Dakota Commission. It may be that, if we were sitting as a Public Service Commission, we would make the same finding and reach the same conclusion; but, as a court of review on appeal, our decision rests upon different considerations, which have already been stated.

A discursive review of the voluminous evidence in the record is not practicable, and would be of little value. We have considered all of it, with the aid of the very excellent briefs and arguments of counsel, and concluded that the order in question ought not to be set aside.

The judgment of the circuit court will therefore be affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BOULDIN, JJ., concur.