(89 South. 524)

## ALABAMA PUBLIC SERVICE COMMISSION et al. v. LOUISVILLE & N. R. CO. (3 Div. 500.)

(Supreme Court of Alabama. May 12, 1921. Rehearing Denied June 30, 1921.)

**1. Public service commissions ⬳21—Courts may enjoin enforcement of orders.**

Public Service Commission, which has succeeded to the powers and duties of what was the Railroad Commission, exercises a limited statutory jurisdiction, and a court of equity may enjoin the enforcement of its orders when in excess of jurisdiction, unreasonable, or unjust.

**2. Corporations ⬳439—Public Service Commissions ⬳6 — Public service corporation may alienate property not essential to duties, and commission may not interfere.**

The common-law rule that a quasi public corporation may not, in the absence of statutory warrant, make any contract by which its power to perform its public functions will be impaired, never did prevent the alienation of such property as was not essential to the exercise of its duties, and hence the Railroad Commission was not authorized to determine whether or not an alienation of such property was consistent with the interest of the public, under Acts 1915, p. 268.

**3. Telegraphs and telephones ⬳11—Sale to railroad of lines on right of way held valid in view of decree.**

Where telegraph company by decree was required to remove its poles, etc., from a railroad right of way, and subsequently sold the poles, etc., to the railroad, which used them only in the operation of its railroad, *held* that the sale to the railroad did not require the approval of the Public Service Commission under Acts 1915, p. 268, in view of Code 1907, § 3867, which amounts to a declaration of public policy by the Legislature that a telegraph company should no longer be allowed to maintain its telegraph lines over and upon a railroad right of way, the sale being the legitimate result of the decree.

**4. Constitutional law ⬳70(3) — Courts will not judicially condemn legislative enactments as to public policy.**

Courts cannot condemn legislation declaratory of public policy such as Code 1907, § 3867, which in effect declares that the best interest of the public requires that a telegraph company shall no longer be allowed to maintain its lines upon a railroad right of way.

**5. Telegraphs and telephones ⬳28—Railroad purchasing line not required to convey commercial messages.**

A railroad which has legally, without the approval of the public service commission, under Acts 1915, p. 268, purchased telegraph lines upon its right of way, cannot be required by the Public Service Commission to transmit commercial messages to towns affected by the sale, under Code 1907, §§ 5632–5725, and Acts 1919, p. 1038.

Appeal from Circuit Court, Montgomery County; Walter B. Jones, Judge.

Bill by the Louisville & Nashville Railroad Company against the Alabama Public Service Commission, and the individual members thereof, to enjoin the enforcement of an order requiring complainant to furnish telegraphic communications between certain towns in Alabama, and to annul and vacate the order. From a decree granting the relief, respondents appeal. Affirmed.

Harwell G. Davis, Atty. Gen., for appellants.

A public service corporation cannot, without legislative authority, make a sale of any of its property that will impair its power to perform its duties to the public. 199 Ala. 9, 74 South. 54; 67 Tex. 692, 4 S. W. 156; (C. C.) 127 Fed. 187; 139 U. S. 24, 11 Sup. Ct. 478, 35 L. Ed. 55; 161 U. S. 693, 16 Sup. Ct. 714, 40 L. Ed. 849; P. U. R. 1916B, 177; 23 A. & E. Enc. of Law, 770. The rule is that property of public service corporations, essential to the discharge of its public duties, is exempt from seizure and sale under writs of execution. 102 Ala. 635, 15 South. 271, 48 Am. St. Rep. 84; 114 U. S. 340, 5 Sup. Ct. 869, 29 L. Ed. 136; 195 Ala. 137, 71 South. 118, Ann. Cas. 1917B, 696. This demonstrates that there was no judicial sale of this property, and shows also how far the courts will go to prevent interference with the public's interest in such corporations performing its functions. A telegraph company cannot abandon its service without legislative authority. 96 Kan. 266, 150 Pac. 554; 96 Kan. 298, 150 Pac. 544, P. U. R. 1915E, 222; 197 Mo. 669, 95 S. W. 881, 114 Am. St. Rep. 790.

Jones & Thomas and Goodwyn & McIntyre, all of Montgomery, for appellee.

No brief came to the Reporter.

SAYRE, J. The bill in this cause was filed by appellee against appellant, and sought to enjoin the enforcement of an order made by appellant whereby appellee was required, among other things, to establish and maintain a public telegraphic service to some 20 towns and villages in this state situated on branch lines of railroad owned and operated by appellee. The trial court

---

overruled a demurrer to the bill of complaint, and denied appellant's motion to dissolve a temporary injunction which had been granted upon the filing of the bill. These rulings are assigned for error.

Prior to April 30, 1920, the Western Union Telegraph Company had maintained a public telegraphic service, or commercial service, as it is commonly called, to the towns affected by appellant's order over lines erected on appellee's right of way. These lines had been erected, and for years maintained and operated, in pursuance of a contract between appellee and the telegraph company, the effect of which, stated in very general terms, was that, in consideration of the telegraph company's use of appellee's right of way for the transmission of the company's commercial messages, it should transmit for appellee messages necessary and useful in the operation of its railroad. In 1912 the Western Union Company, in virtue of a provision to that end, had elected to terminate the contract, and had then set on foot proceedings to condemn to its use in situ the lines of poles and wires which it had previously operated on appellee's right of way, but at the end of litigation long drawn out (L. & N. R. R. Co. v. Western Union Telegraph Co., 195 Ala. 124, 71 South. 118, Ann. Cas. 1917B, 696; Western Union Telegraph Co. v. L. & N. R. Co., 244 U. S. 649, 37 Sup. Ct. 743, 61 L. Ed. 1371; Western Union Telegraph Co. v. L. & N. R. Co. [D. C.] 201 Fed. 946; L. & N. R. R. Co. v. Western Union Telegraph Co., 207 Fed. 1, 124 C. C. A. 573; L. & N. R. Co. v. Western Union Telegraph Co., 252 Fed. 29, 164 C. C. A. 141), it was ordered, adjudged, and decreed, in effect, by courts of competent jurisdiction that the telegraph company should remove its telegraph lines in question from appellee's right of way by midnight of April 30, 1920. Thereafter, viz. May 1, 1920, as the result of previous negotiations appellee purchased the lines in question from the Western Union and the same were immediately delivered to appellee, after which commercial service over said lines was discontinued. Previous to the execution of the contract of sale aforementioned, viz. about April 20, 1920, the Western Union notified the Alabama Public Service Commission that, on account of the decrees and judgments of the court in the premises, it would on April 30, 1920, vacate appellee's right of way, and thereafter would discontinue its public telegraph service to the 20 towns and villages to which we have referred.

On May 1, 1920, the Public Service Commission cited appellee to show cause, in substance, (1) why appellee should not submit for approval the contract by which it had purchased from the Western Union the lines of poles and wires in question, and why (2) it should not be required to establish and continue over the lines so purchased public telegraph service to the towns and villages aforementioned. Afterwards, and as the result of a hearing, the Public Service Commission entered an order approving appellee's purchase of the lines in question, but upon condition that appellee continue to furnish through and over them the public telegraph service previously furnished by the Western Union, and ordering that, so long as appellee retained possession of said lines, it should furnish public telegraph service to said towns and villages, after which appellee filed its bill in this cause, and proceedings were had and decrees entered as noted in the beginning.

[1] The Public Service Commission, which had succeeded to the powers and duties of what was the Railroad Commission, exercises a limited statutory jurisdiction and the court of equity may enjoin the enforcement of its orders when in excess of jurisdiction, unreasonable, or unjust. Railroad Commission v. Ala. North. Ry. Co., 182 Ala. 357, 62 South. 749.

[2] By Acts Aug. 6, 1915 (Acts, p. 268), it was provided that—

"The property of a public utility, together with its franchises, contracts, business, good will, and other assets, may be lawfully sold and conveyed or leased to, and thereafter lawfully held, enjoyed and operated by, a purchaser then engaged or proposing to engage in the business conducted by such public utility * * * whenever such sale and conveyance or lease of the property * * * is consistent with the interests of the public. * * * The question whether the proposed sale and conveyance or lease is consistent with the interests of the public shall be determined by * * * the Railroad Commission of Alabama, and if * * * the Railroad Commission of Alabama * * * determines that the proposed sale and conveyance, or lease, is consistent with the interests of the public, their determination shall be shown by their approval of the proposed sale and conveyance or lease."

The act further provided that nothing therein contained should be construed to limit or restrict the right to sell, etc., where a sale would be legal without reference to its provisions. Section 2 of the act. Of a proceeding under this act this court said in Ex parte City of Birmingham, 199 Ala. 9, 74 South. 51; "It is, in substance, a proceeding for a statutory license to do that which the law otherwise does not permit"—meaning, as section 2 very clearly indicates, that the act contemplates and authorizes inroads, to a limited extent, upon the common law where the rule that a quasi public corporation may not, in the absence of statutory warrant, make any contract by which its power to perform its public functions will be impaired (14a C. J. 543, 544); but this rule of the common law did never prevent the alienation of such property of a corporation as was not essential to the exercise of its duties (Id).

[3] The question, then, is whether the property involved in the sale here under consideration falls within that class of property which the Western Union Telegraph Company, a corporation whose franchise is affected by a public interest, would by the principles of the common law be prohibited to dispose of by sale or lease. In the absence of the judicial decrees affecting this property, there would be no hesitation in declaring its sale to be unlawful. But the decrees are before us, and their effect on the question at issue must be determined.

Presenting the question stated. above, though in somewhat different form and language, the Commission contends that the lines of the Western Union, constructed and used to render service to the public, are charged with a trust in favor of the public, and cannot be absolved from the burden of that trust unless by the consent of the state, expressed by competent authority, and that, in the event of an unauthorized alienation, the alienee may be compelled to the performance of the trust to which the property has been dedicated. There is no occasion to deny the effect of appellant's proposition, thus stated; but, as the exigency of the case demanded, appellant has gone further, and asserts in effect that the judicial decrees to which we have referred are of no consequence in the premises for the reason that no court of competent jurisdiction has determined that the sale in question was to the best interest of the public.

[4] It is the policy of this state, formulated in section 3867 of the Code of 1907, meaning, in other words, that it is, in the judgment of the Legislature, to the best interest of the public, that, in the circumstances affecting the relations between appellee and the Western Union, the latter should no longer be allowed to maintain and operate its telegraph lines over and upon the former's rights of way; and this declaration of public policy being within the constitutional competency of the Legislature, to judicially condemn it would be plain usurpation. Ex. parte City of Birmingham, supra. But the property of the Western Union in its poles and wires, to be removed, was not destroyed. It had therefore the right to remove these lines, and, in necessary consequence, to dismantle and reduce them to the status of mere junk or salvage, wholly disorganized and unfit for the transmission of telegraphic messages, in which condition no policy of common or statute law prohibited their disposition by sale or otherwise. Our judgment is that the inability of the Western Union to continue its service over the lines in question cannot be laid to the sale and purchase thereof, but must be accepted as a legitimate result of the decrees rendered in the litigation between the telegraph company and appellee, and our conclusion is that the sale did not require the approval of the Commission, and that its approval upon condition, amounting in the circumstances to a disapproval, was without the power of the Commission.

[5] As to the second proposition advanced by the Public Service Commission—namely, that appellee, the Louisville & Nashville Railroad Company, was by the order of the Commission legally and properly required to establish and maintain over the telegraph lines purchased from the Western Union a public service for the transmission of commercial messages—we have stated our reasons for holding that the Commission had no authority to impose upon appellee the duty of operating the lines for the public as a condition of its approval of the purchase from the Western Union. This last requirement of the Commission rests, then, upon the statutes creating the Commission and defining its powers and jurisdiction. The right of appellee to maintain and operate telegraph lines for the dispatch of its trains and transmitting messages on appellee's business between its officers and agents is not denied. Appellee has never established or maintained a public telegraphic service to any of the towns or villages affected by the sale heretofore referred to or the order of the Commission under review, nor upon any of its branch lines of railroads to said points, nor, so far as appears, has it maintained such service to or from any points in this state. Since the purchase of the lines of poles and wires in question they have been used exclusively for the private purposes of the railroad company. In view of what has been said in regard to the purchase of these lines from the Western Union, the Commission has only such power in the matter of these lines as it would have had in the case of an application for an order requiring the original establishment of lines and service to points along its railroad not previously reached by the telegraph. We are not advised of the existence of any such power. The Commission is—

"charged with the duty of supervising, regulating, and controlling all transportation companies doing business in this state, in all matters relating to the performance of their public duties, and their charges therefor, and of correcting abuses therein * * * and shall require them to establish and maintain all such public service, facilities, and conveniences as may be reasonable and just," etc. Code of 1907, § 5651.

The Commission has also the other powers over railroads conferred by chapter 130 of the Code, of which section 5651 is a part, by the act of August 6, 1915, considered above, and by an act of September 30, 1919 (Acts, p. 1038); but none of its enumerated powers can be construed as conferring the power attempted to be exercised in this case, either expressly or by implication. Conrad v. Western Union Telegraph Co., P. U. R. 1920E, 499; Atchison, T. & S. F. Ry. Co. v.

State, 23 Okl. 231, 100 Pac. 16, 18 Ann. Cas. 102.

Something is said in the briefs in reference to the duty of the Western Union Company to establish lines outside appellee's right of way, in replacement of the lines it has been required to abandon, over which to maintain a telegraphic service for the transmission of commercial messages; but that company is not a party to this proceeding, and its duty in the premises cannot here be determined. Without regard to what duty may be imposed on the Western Union, we hold that the Public Service Commission was without authority to make the order of which the Louisville & Nashville Railroad Company complains. It follows that the decree of the trial court was correct.

Affirmed.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.

On Application for Rehearing.

SAYRE, J. Application overruled.
All the Justices concur.