261 So.2d 31

**MALL GIFT CARDS, INC., a corporation**

v.

**Ferrell WOOD et al.**

**6 Div. 871, 871–X.**

Supreme Court of Alabama.

March 2, 1972.

Rehearing Denied April 27, 1972.

356

Speir, Robertson, Jackson & Irons, Birmingham, for appellant.

McDaniel, Hall & Parsons, Birmingham, for appellees and cross-appellants.

MERRILL, Justice.

This appeal is from a decree in a declaratory judgment proceeding in equity denying complainant-appellant's right to renew its lease for five years. Respondents filed a cross bill and the relief prayed for therein was denied. Respondents have filed cross-assignments of error.

The premises leased consisted of commercial space located in the middle of the Eastwood Mall aisle in Birmingham. Appellant's first lease was with Eastwood Corporation in 1960 for five years. Eastwood renewed the lease on September 24, 1965. Later appellee, Alabama Farm Bureau Mutual Casualty Insurance Company, Inc., purchased the Eastwood Mall and the existing leases.

There was a meeting in August, 1970 between Charles A. Speir, as President of Mall Gift Cards, Inc., and Ferrell Wood, Property Manager of Alabama Farm Bureau Mutual Casualty Insurance Company, for the purpose of discussing a renewal of the lease. Subsequent to this meeting, Speir received a letter from respondent, Molton, Allen & Williams, corporate leasing agent for Alabama Farm Bureau Mutual Casualty Insurance Company, stating that the lease had been extended until December 31, 1970. It was Speir's understanding from the August meeting that the extension was to June 1, 1971.

The bill of complaint was filed on December 16, 1970.

Appellant alleged that a legal controversy arose under its lease and that there was a well established custom and usage within the Birmingham business community which

required the lessor, Alabama Farm Bureau Mutual Casualty Insurance Company, Inc., to renew its lease where the following conditions existed concurrently: lessee had fulfilled its covenants during occupancy; the lessor had no superior existing tenant available to lease the premises; and the lessor does not desire the premises for purposes of its own. Appellant below further averred that Ferrell Wood, acting within the scope of his employment, leased the premises by oral agreement until June 1, 1971.

The bill averred that the respondents had notified Mall Gift Cards, Inc., in writing, that the lease on commercial space within the Eastwood Mall Shopping Center expired on December 31, 1970, and asked for a temporary restraining order to preserve the status quo of the parties pending adjudication of the issues.

A fiat was issued by the court on December 16, 1970, conditioned upon the complainant entering into a good and sufficient bond in the amount of $500.00. This bond was filed and approved on January 4, 1971, and a temporary restraining order was issued by the register to the respondents. No demurrer was filed to the bill by any respondent. Respondents, Molton, Allen & Williams and Ferrell Wood, filed answers to the bill and respondent, Alabama Farm Bureau Mutual Casualty Insurance Company, Inc., filed its answer admitting that there were no provisions contained in the lease regarding an option to renew, and for further answer filed a cross bill seeking double the amount of annual rent under the subject lease pursuant to Tit. 7, § 977, Code 1940 (as Recompiled 1958). The cross-complainant in the court below further sought punitive damages in the amount of $10,000.00.

Subsequently, Molton, Allen & Williams filed a petition for interpleader seeking to pay to the register all monies paid as rental income by Mall Gift Cards, Inc. On March 8, 1971, an order allowing such monies and funds to be interpled was granted by Judge Barber. On April 2, 1971 respondents, Ferrell Wood and Alabama Farm Bureau Mutual Casualty Insurance Company, Inc., filed a motion to increase the injunction bond to the sum of $50,000.00. After a hearing, the court increased the bond to $5,000.00.

A motion by Mall Gift Cards, Inc. for jury trial was denied on April 30, 1971, the day the hearing began. A final decree was entered on May 10, 1971, providing that the prayer for renewal of the lease for five years was denied; that there was an oral extension of the lease to permit occupancy of the leased premises until midnight, May 31, 1971; that the prayers of the respondent cross-complainant were denied and the writ of injunction was discharged.

The issues raised by the argued assignments of error are whether the court erred in failing to apply the alleged established custom and usage within the Birmingham community to the renewal of the lease, and whether the court erred in refusing to grant a trial by jury.

 The reason appellant is forced to rely on custom and usage is that in the lease (a printed form), Section 35 entitled "Options to Renew" was lined out, and the other reference to renewal of the lease, a part of Section 29, was also marked out. Each page of the lease was initialed "APPROVED" by both the lessor and the lessee, and it is obvious that the intention of the parties in 1965 was that there would be no option to renew. Also, Section 26 provided: "Lessee shall, upon termination of this lease whether by lapse of time or otherwise, surrender to Lessor the demised premises, together with all replacements thereto in good order, condition and repair, except for ordinary wear and tear and loss by fire or other casualty."

 It is true that this court has applied custom and usage to contracts. In Douglas & Mizell v. Ham Turpentine Co., 210 Ala.

180, 97 So. 650, the court quoted from East Tennessee, V. & G. R. Co. v. Johnston, 75 Ala. 596, as follows:

> " 'Where there is an express contract, parol evidence of a usage is admissible to explain terms ambiguous or doubtful in signification, or from which to infer the intention, understanding and agreement of the parties, and to incorporate a stipulation or element, wherein the contract is silent; in such case, the usage or custom becomes a part of the contract. Barlow v. Lambert, 28 Ala. 704, 65 Am. Dec. 374. "The proper office of a custom or usage in trade is to ascertain and explain the meaning and intention of the parties to a contract, whether written or parol, which could not be done without the aid of this extrinsic evidence. It does not go beyond this, and is used as a mode of interpretation on the theory that the parties knew of its existence, and contracted with reference to it." ' "

The *East Tennessee* case also holds that a usage or custom, to be admissible in explanation of the terms of a contract which are ambiguous or doubtful in signification must be reasonable, must not contravene or displace any of the general principles of statutory or common law, or vary the express terms of the contract, and must be brought home to the knowledge of the party sought to be charged, either by proof of actual notice, or by proof of its existence sufficiently long to raise a presumption of knowledge. These principles are cited many times in our cases.

In Miller v. Gray, 136 Tex. 196, 149 S. W.2d 582, 141 A.L.R. 1237, the court said:

> " * * * We call attention, however, to the fact that evidence of custom is admissible only to explain an ambiguous contract or to add to it an element not in contravention of its terms; but such evidence is never admissible to contradict the plain unambiguous covenants and agreements expressed in the contract itself. * * * "

The case nearest in point seems to be Werner v. Footman, 54 Ga. 128, where the court stated:

> "The contract of lease was in writing. The right of the landlord as to having possession at the end of the lease was fixed by that contract. The evidence was strong that he had not yielded that right, and also that the tenant would not surrender the possession. *It was not competent for the defendant to evade the legal right of his landlord, under the written contract, by proving that a certain custom existed between landlords and tenants in the city of Savannah.*" [Emphasis supplied]

The evidence, as to custom and usage, and it all came in as the cause was tried under the provisions of the so-called "lazy lawyer statute," General Acts 1943, p. 105, listed as Tit. 7, § 372(1) in the 1958 Recompilation, was in conflict.

Mr. Charles A. Speir, appellant's president and owner of Mall Gift Cards, Inc. until a few days prior to the filing of this suit, is also an attorney at law and he was qualified as an expert in the field of real estate law. He testified that there was a well-recognized custom and usage within the Birmingham business community requiring renewal of a lease on commercial mall space.

Appellant's witness, James B. Grimmer, was primarily engaged in the business of leasing and developing shopping centers and had personal knowledge of the original leases executed on the Eastwood Mall Shopping Center. He was qualified as an expert and testified that he was familiar with the customs and usages in leasing commercial mall space in the Birmingham community during the period of 1965. This expert testified that where the tenant was good, paid the rent on time, and produced the highest and best use for the premises, such tenant should be given the opportunity to renew the lease. Mr. Grimmer further testified that a custom and

usage existed in Birmingham, Alabama where a corporation took possession of commercial space in a mall shopping center in Birmingham as a lessee for a period of five years and toward the end of the lease its period was extended by letter and near the end of the lease as extended, the lessor had no tenant who was willing to pay substantially larger fixed rental income and the lessor did not desire the premises for a purpose of its own and the lessee had performed the covenants under the lease, the lessee would be entitled to a renewal of the lease which was in effect.

But on direct examination, Mr. Grimmer also testified as follows:

"Q Under this custom and usage when would the Lessee be required to make a demand on the Lessor for a renewal of the premises?

* * * * * *

"A Normally it should be a one-year and certainly not less than six-months.

"Q It should be a six-months demand prior to expiration of that lease in effect?

"A Right."

The first mention that Mall Gift Cards, Inc. ever made of a five-year renewal was in a letter dated December 11, 1970 to Mr. Marshall Haynes, Vice President of Molton, Allen & Williams, Inc., about two and one half months after the lease expired.

Mr. Marshall Haynes, Vice President of real estate and commercial operations for Molton, Allen & Williams, Inc. qualified as an expert in real estate matters. He testified that Molton, Allen & Williams, Inc. was the largest commercial operation in Birmingham and that in his judgment he had probably made more leases in the last ten years in Birmingham than any other real estate agent. He further testified that he had not heard of the custom and usage alleged in the complaint and that it was "new" to him.

Both Grimmer and Haynes testified that an option to renew is one of the most important parts of a written lease.

No custom or usage can prevail which conflicts with an established principle of law. Maddox v. Hunt, 281 Ala. 335, 202 So.2d 543, 28 A.L.R.3d 1373; Arrant v. Georgia Casualty Co., 212 Ala. 309, 102 So. 447. And a custom or usage contrary to a statute ought not to be considered. Maddox v. Hunt, supra; First National Bank of Montgomery v. Nelson, 105 Ala. 180, 16 So. 707. Here, the attempt to make a five-year lease on property is contrary to the statute of frauds, Tit. 20, § 3, Code 1940, as amended. Hackney v. Griffin, 244 Ala. 360, 13 So.2d 772.

Custom and usage may be admissible to explain what is doubtful, but it is never admissible to contradict what is plain, or to change an express contract. Homeland Ins. Co. v. Crescent Realty Co., 277 Ala. 213, 168 So.2d 243; Stephenson Brick Co. v. Bessemer Engineering & Construction Co., 224 Ala. 494, 140 So. 573.

The following statements are found in Zimmern v. Southern Ry. Co., 209 Ala. 284, 96 So. 226:

"'It is the well-settled general rule that in order that a custom or usage may be regarded as binding, it is essential that it be legal, and that a custom will not be recognized which is contrary to established law, inconsistent with good morals or in conflict with the general or public policy of the law.' 27 R.C.L. p. 164. It has been settled that if, on a given state of facts, the rights and liabilities of the parties to a contract are fixed by the general principles of the common law, they cannot be changed by any local custom of the place where the contract was made. Barnard v. Kellogg, 10 Wall. 383, 19 L.Ed. 987. 'No usage is good which conflicts with an established principle of law, any more than one which contravenes or nullifies the express stipulations of a contract.' * * *"

There was evidence that the proposed lessee, Ferrell Wood, and his wife operated a card shop in Alabama Farm Bureau Five Points West Shopping City in Birmingham, and both Mr. Haynes and Mr. Ed Lowder, Executive Vice President and Secretary of Alabama Farm Bureau, testified that the card shop in Eastwood Mall should be doing $150,000.00 gross per year and would do so under the management of Ferrell Wood's wife. This would produce an annual rental of $15,000.00 per year as compared with $9,500.00 realized for the year 1970.

When appellant questioned Mr. Grimmer as to the custom and usage in Birmingham, appellees objected even though the case was being tried under the "equity rules." In reply to the objection, the court candidly stated:

"I will overrule. As I understand it, the whole thesis of the Complainant's contention relative to the question of the five-year lease rests upon the idea as alleged in the bill of complaint that the custom and usage does exist relative to such renewals where tenants are good tenants and whether that is the law in the state of Alabama or not or whether the law in the state of Alabama will permit that or not is something I am going to have to determine ultimately and I reserve my determination of it beyond the ruling on the preliminary hearing on the demurrer and I am giving my reason because I want it to go into the record because I am convinced that whichever way this case is decided it will go to the Supreme Court. I want to be frank. So, there you are, and I will overrule the objection and let Mr. Grimmer answer."

Laying aside the question of admissibility, we find no merit in the assignments of error which charge that the court erred in denying a renewal of the lease for five years. Under the authorities previously cited, we are convinced that the alleged usage and custom in Birmingham could not change the written lease so as to force a five-year renewal.

That brings us to the assignments charging error in refusing a trial by jury.

Appellant had a demand for a jury trial "pursuant to Title 7, Section 164" on its initial pleading. The bill of complaint was filed December 15, 1970. On the day the cause was set for trial, April 30, 1971, additional pleadings were filed and among them was a written "MOTION FOR JURY TRIAL." The trial court made a preliminary statement that they had "already had a delineation of the issues at our pre-trial." Some rulings were made on the pleadings, and just before the calling of the first witness, there was a short discussion about the demand for jury trial. The trial court stated that it was not going to allow a jury trial and the last four statements on that point read:

"MR. PARSONS: If it please the Court may I say this for the record, that there was such an agreement that there wouldn't be a jury trial.

"THE COURT: That is the Court's recollection, too.

"MR. IRONS: At this time we would like to call Mrs. Stewart as our first witness to the stand.

"THE COURT: All right."

In Item Five of the court's decree, it was said:

"As stated in Open Court at oral hearing, the Court had presumed that a previous statement made at a previous hearing by counsel for Complainant expressly waived a trial by jury, but regardless thereof, the request for a jury trial is denied."

We are not convinced that error was committed in the trying of this case without the aid of a jury.

### Cross-Assignments.

Appellees Wood, Alabama Farm Bureau Mutual Casualty Insurance Co., Inc., and Allen, Molton & Williams argue in brief that the court erred in denying the prayer of each appellee that their attor-

neys' fees be charged to appellant, and that it was error to tax the costs against the respondents (appellees) in the lower court.

As to the taxation of costs, this court said in City of Birmingham v. Bouldin, 280 Ala. 85, 190 So.2d 279:

> "Equity Rule 112 gives the court the power to apportion costs. 'In equity the matter of costs rests largely in the discretion of the chancellor.' Thompson v. Bryant, 251 Ala. 566, 38 So.2d 590; Lucas v. Lucas, 258 Ala. 515, 64 So.2d 70. We cannot say that there was an improper exercise of the trial court's discretion on this question. See Troy Bank & Trust Co. v. Brantley, 263 Ala. 428, 82 So.2d 618, where we approved the assessment of costs against the successful party where the question decided in the main case was not, as here, free from doubt, and the result redounded to the benefit of the prevailing side."

We do not think the trial court abused its discretion in the matter of taxing the costs.

■ As to the claim for attorneys' fees, our decisions are uniform that in matters of this character much must necessarily be left to the sound discretion of the trial court. City of Birmingham v. Bouldin, supra; King v. Smith, 247 Ala. 1, 22 So.2d 336; Broughton v. Nance, 244 Ala. 499, 14 So.2d 505. Again, we do not find any abuse of its discretion in the ruling of the trial court on this question.

As we understand it, the basis for the claim of attorneys' fees is Section 43 of the lease, which provides in part, that "The Lessee will pay Lessor a reasonable attorney's fee in the event Lessor employs an attorney to collect any rents due hereunder by Lessee, * * *."

Appellees showed that they wrote a letter to appellant to vacate the premises by February 1, 1971, and that by holding over appellant deprived the lessor of an increased rental of at least $440.00 per month.

It was conceded by all sides that the lease was extended from its expiration date in September, 1970 through December in order that appellant could have the benefit of the card sales in December, which is the best month in the year in that business. But it is evident that the trial court believed the evidence previously referred to about the meeting in August, 1970. Mr. Speir and Mrs. Norman, who was also present, stated that Mr. Wood told them the lease would be extended to June 1, 1971. It is also undisputed that immediately after that meeting, Mr. Speir told the employees that the lease had been extended to June 1, 1971. Thus, there was evidence to support the trial court's finding that there was an oral lease, or extension of the lease, to permit the occupancy of the leased premises by appellant until midnight of May 31, 1971.

No reversible error has been argued in briefs.

Affirmed.

HEFLIN, C. J., and LAWSON, HARWOOD and MADDOX, JJ., concur.