In Lake Martin/Alabama Power Licensee Association, Inc. v.Alabama Power Co., 547 So.2d 404 (Ala. 1989), this Court affirmed the trial court's final summary judgment for Alabama Power Company; that judgment related to most of the claims asserted, leaving only three counts remaining to be ruled upon: Count 4) violation of state law by failure of Alabama Power to apply to the Alabama Public Service Commission for approval of the sale of lots on Lake Martin; Count 6) breach of a requirement of good faith and fair dealing; and Count 12) violation of state law by improper accounting by Alabama Power of income received from the sale of these lots on Lake Martin. See Lake Martin/Alabama Power Licensee Association, Inc., supra, for a thorough discussion of the facts.
The trial court has now granted Alabama Power's motion for summary judgment on Counts 4, 6, and 12; and the plaintiffs have appealed. We affirm.
 COUNT 4
(Failure of Alabama Power to apply to the Public Service Commission for approval of the sale of lots.)
At common law, a quasi-public corporation could not dispose of property in a way that would impair "its power to perform its public function," but it could dispose of property that was "not essential to the exercise of its duties." Alabama PublicService Commission v. Louisville N.R.R., 206 Ala. 326, 827,89 So. 524, 525 (1921).
Alabama Code 1975, §§ 37-4-40 and -41, authorizes a utility to sell property that it could not lawfully sell at common law, if it is determined by the Public Service Commission "that the proposed sale . . . is consistent with the interests of the public." However, § 37-4-43 provides that nothing in §§ 37-4-40
through 37-4-44 (Division 1, Article 2, Title 37) "shall be construed to limit or restrict any right to sell . . . any property . . . where the same is legal without reference to the provisions of" Division 1, Article 2, Title 37. A utility may lawfully sell, without the approval of the Public Service Commission, any property that is not essential to the performance of its public function. Alabama Public ServiceCommission v. Louisville N.R.R., 206 Ala. at 328,89 So. at 526.
Alabama Power presented evidence — sufficient to make a prima facie case — that the disposition of the Lake Martin recreational lots would not impair Alabama Power's ability to perform its public functions and that Alabama Power's continued ownership of these lots was not essential to the exercise of its duty as a utility. The plaintiffs did not rebut that prima facie case. Therefore, Alabama Power was not required to obtain permission from the Public Service Commission to sell these recreational lots. In their briefs, the plaintiffs contend that these recreational lots were acquired by condemnation, and, therefore, could not be sold. The record does not show how the land constituting the recreational lots was acquired. The record does show that Martin Dam and Lake Martin were built by Alabama Power in the 1920's and were operated pursuant to a license issued by the Federal Energy Regulatory Commission ("FERC") (or its predecessor) for an initial period of 50 years, during which time the Alabama Power land bordering Lake Martin was included within FERC's definition of "project lands" and could not be sold. When the FERC reviewed Alabama Power's license in 1981, it determined that lots licensed to private individuals for vacation homes did not constitute "public recreation" facilities, and licensed lots were deleted from the definition of "project lands" relating to Martin Dam. There was nothing before the trial court when it granted Alabama Power's motion for summary judgment to indicate that the sale of these lots would impair Alabama Power's ability to perform its public functions or that the continued ownership was essential to the exercise of Alabama Power's duty as a utility. The trial court did not err in entering the summary judgment as to Count 4. *Page 944 
 COUNT 6
(Breach of requirement of good faith and fair dealing.)
The plaintiffs do not contend that Alabama Power has breached any specific terms of the license agreements (contracts) between Alabama Power, as licensor, and the plaintiffs, as licensees. In the executed written contracts, the plaintiffs licensed their lots for an agreed fee, for fixed terms of up to 15 years, and agreed that at the end of that term they would remove their improvements and restore the lots to their prior condition. The plaintiffs failed to produce a scintilla of evidence of fraud that would enable them to avoid the written terms of their contracts, Lake Martin/Alabama Power LicenseeAssociation, Inc. v. Alabama Power Co., 547 So.2d at 407-08; and the plaintiffs now argue that Alabama Power's "implied duty to act in good faith" requires it to continue licensing the lots to the plaintiffs for an indefinite period without any significant increases in rent. We do not agree.
In Tanner v. Church's Fried Chicken, Inc., 582 So.2d 449, 451
(Ala. 1991), this Court reiterated its view, previously expressed, that there can be no valid bad faith claim under the facts of this case:
 "Any suggestion that the plaintiff's bad faith claim can be pursued as a tort claim under the facts of this case, seems to have been settled in Kennedy Electric Co. v. Moore-Handley, Inc., 437 So.2d 76, 81 (Ala. 1983), wherein this Court stated, `We are not prepared to extend the tort of bad faith beyond the area of insurance policy cases.' See Brown-Marx Associates, Ltd. v. Emigrant Savings Bank, 527 F. Supp. 277 (N.D.Ala. 1981), aff'd, 703 F.2d 1361 (11th Cir. 1983); Harrell v. Reynolds Metals Co., 495 So.2d 1381, 1388 (Ala. 1986)."
Neither is the plaintiffs' bad faith claim viable under contract law, whether there is an express or implied obligation of good faith. Tanner v. Church's Fried Chicken,582 So.2d at 451-52; Government Street Lumber Co. v. AmSouth Bank, N.A.,553 So.2d 68, 72 (Ala. 1989). In the cases relied upon by the plaintiffs, this Court did not recognize a bad faith claim under contract law absent a breach of a specific term of the contract. Eager Beaver Buick, Inc. v. Burt, 503 So.2d 819 (Ala. 1987), involved a breach of an implied promise not to hinder or delay performance of the specific terms of the contract by the other party, which contracting parties impliedly promise not to do. "A breach of this implied promise may be construed as an actual breach of the contract, thereby giving the other party a cause of action on the contract." 503 So.2d at 822. There is not a scintilla of evidence that Alabama Power hindered or delayed the plaintiffs in their performance under their contracts. Hoffman-LaRoche, Inc. v. Campbell, 512 So.2d 725
(Ala. 1987), involved a wrongful employee termination. A majority of this Court held that the employment contract, in which satisfactory performance of work by an employee was a specific term of the contract, was violated when an employer discharged an employee for unsatisfactory performance, when the employee was not physically capable of satisfactorily performing. There is not a scintilla of evidence that Alabama Power or the plaintiffs were not physically able to satisfactorily perform in accordance with the licenses. They have performed; therefore, we do not understand howHoffman-LaRoche, Inc., supports the plaintiffs' position.
In fact, we note that the majority of this Court inHoffman-LaRoche, supra, relied on Corbin on Contracts, § 654E(A):
 " 'It is a basic principle that justice is not served when somebody gets something for nothing. . . . The spirit of the bargain usually contemplates that a contracting party shall not try to deprive the other of the consideration for which he bargained. . . . Besides forbidding attempts to prevent the other party from getting the consideration for which he bargained through breach or use of technical provisions contained in the contract, this principle of justice forbids attempts by the actor to get more for himself than the other party reasonably contemplated giving him at the time the contractual relationship was entered into, absent *Page 945 
good cause. Either kind of motive to evade the spirit of the bargain is condemned. . . .' "
512 So.2d at 738.
There is no evidence that Alabama Power has deprived the plaintiffs of the consideration for which they bargained, nor is there any evidence that Alabama Power attempted to get more for itself than the plaintiffs reasonably contemplated giving it at the time the license agreements were entered into, although the plaintiffs may be trying to get more for themselves than Alabama Power reasonably contemplated giving them at the time the license agreements were entered into; however, this certainly does not create a contractual cause of action in favor of the plaintiffs. This Court has explicitly held that there is no good faith contractual cause of action,Tanner v. Church's Fried Chicken, supra; Government StreetLumber Co. v. AmSouth Bank, supra; that means that bad faith is not actionable absent an identifiable breach in the performance of specific terms of the contract. There is no identifiable breach in the performance of the specific terms of the license agreement by Alabama Power; and there is no contractual cause of action for breach of an implied duty of good faith that nebulously hovers over the contracting parties, free from the specific terms of the contract.
When fraud in the inducement has been ruled out, as it has in this case (547 So.2d at 407-08), it is clear that under Alabama law all prior statements and negotiations are merged into the written contract and that, the written agreement being the best evidence, in the absence of an ambiguity (and the plaintiffs do not contend that the terms of the contract are ambiguous), parol evidence will not be received to explain, contradict, vary, add to, or subtract from the express terms of the written contract. Smith v. Citicorp Person-to-Person Financial Centers,Inc., 477 So.2d 308, 311 (Ala. 1985); Shepherd Realty v.Winn-Dixie Montgomery, Inc., 418 So.2d 871, 874 (Ala. 1982).
The licenses were not to be performed within one year and they conveyed an interest in land. Therefore, to allow the plaintiffs to impose obligations based on oral statements, promises, or prophecies would violate the Alabama Statute of Frauds. Ala. Code 1975, § 8-9-2. Mall Gift Cards, Inc. v. Wood,288 Ala. 355, 360, 261 So.2d 31, 35 (1972).
The trial court properly entered the summary judgment for Alabama Power as to Count 6.
 COUNT 12
(Improper accounting by Alabama Power of income received from the sale of the licensed property.)
There was no motion for summary judgment pending as to Count 12 when the trial court entered its summary judgment on all but counts 4, 6, and 12. On the first appeal, Justice Steagall noted this. 547 So.2d at 410. After exhaustively arguing that Alabama Power is trying to charge too much for the sale or the rental renewal of these recreational lots (a position contrary to the interest of Alabama Power rate payers), the plaintiffs now argue that the full sales price or rental revenue has been removed from the rate base computation (a pro-rate payer argument). Excellent advocacy sometimes requires a party to run with the rabbits and chase with the hounds.
The allegations in Count 12 and the arguments presented in the brief in support of Count 12 are very similar to the allegations set out in Count 11 alleging that Alabama Power "has conspired with the Alabama Property Company to remove [the recreational lots] from the rate base computation." Count 11 alleged a conspiracy between Alabama Power and Alabama Property Company. Count 12 alleged a wrong by Alabama Power in doing those things that it was alleged to have conspired with Alabama Property Company to do in Count 11. In affirming the trial court's summary judgment, Justice Steagall, writing for this Court, said:
 " 'A civil conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. The gist of *Page 946 
the action is not the conspiracy alleged, but the wrong committed. O'Dell v. State [ex rel, Patterson], 270 Ala. 236, 117 So.2d 164 (1959); Sadie v. Martin, 468 So.2d 162, 165 (Ala. 1985).'
 ". . . By its definition, a conspiracy requires an underlying unlawful or wrongful act, neither of which is present here."
(Emphasis added.)
This Court did not hold that there were not two or more persons acting so that there could not be a conspiracy, but held that there was no underlying unlawful or wrongful act done by the alleged conspirators, Alabama Power and Alabama Property Company.
There is nothing in the record before this Court now, as there was nothing in the record before this Court now, as there was nothing in the record before the trial court when it entered the summary judgment, to suggest that what Alabama Power did was unlawful or wrongful. There is uncontroverted evidence that any sums received from the sale or lease of these recreational lots by Alabama Property Company will reduce the amount Alabama Power will have to borrow in order to acquire necessary electricity generation and distribution equipment; a reduction of that amount would be a significant and direct benefit to Alabama Power rate payers.
The trial court properly entered the summary judgment for Alabama Power as to Count 12.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, STEAGALL and INGRAM, JJ., concur.