IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
JANUARY 25, 2011 Session

# APPLEBY TRUST LIMITED, Trustee v. NEW ENGLAND LIFE INSURANCE COMPANY, A DIVISION OF METROPOLITAN LIFE INSURANCE COMPANY

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-002153-07      Lori Ridder, Judge**

---

**No. W2010-00467-COA-R3-CV - Filed March 7, 2011**

---

Current owner of a life insurance policy filed a complaint for declaratory judgment, alleging that the life insurance company wrongfully terminated the policy after failing to notify the current owner of the impending lapse of the policy for nonpayment of premiums. The life insurance company filed a motion for summary judgment, along with an affidavit and a copy of the policy, in an attempt to demonstrate that it had provided notice in accordance with the policy terms. The current owner filed a response along with an affidavit. The trial court granted summary judgment to the life insurance company. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Bruce S. Kramer, Scott A. Kramer, Memphis, Tennessee, for the appellant, Appleby Trust Limited

Prince C. Chambliss, Jr., Memphis, Tennessee, for the appellee, New England Life Insurance Company

# OPINION

## I. FACTS & PROCEDURAL HISTORY

In 1999, New England Life Insurance Company ("NEL") issued a policy insuring the life of a Mr. Thomas, who lived in Alabama. The owner and beneficiary of the policy was Ms. Thomas, the ex-wife of Mr. Thomas. According to the policy, premium notices were to be mailed on a quarterly basis to Ms. Thomas.

At some point, Ms. Thomas began to experience difficulties making the premium payments. A premium notice was timely mailed to Ms. Thomas to advise her that a premium was due on October 25, 2005. When no payment was received, a lapse notice was mailed to Ms. Thomas, on or about December 25, 2005, notifying her that the policy would lapse if the October payment was not received by March 1, 2006. Another premium notice was timely mailed to Ms. Thomas to advise her that another premium was due on January 25, 2006. The October premium payment was ultimately received by NEL on February 23, 2006, but the January premium remained unpaid.

On February 22, 2006, unbeknownst to NEL, Ms. Thomas sold the insurance policy to Lexington Trust, which is a trust established under Florida law. On or about March 25, 2006, NEL sent another lapse notice to Ms. Thomas because it still had not received payment of the January premium. The lapse notice stated that the policy would lapse if the January payment was not made by May 29, 2006.

On March 27, 2006, NEL received a "Beneficiary and Owner Designation" form that had been sent by Lexington Trust on March 24. It sought to designate Lexington Trust's trustee, Appleby Trust Limited, as the new owner and beneficiary of the policy. On March 30, 2006, NEL sent a letter to Lexington Trust, stating that it could not accept the Beneficiary and Owner Designation form without a taxpayer identification number being provided for Appleby Trust.

According to Appleby Trust, it is a foreign entity that does not claim tax treaty benefits, and therefore, it does not have, and is not required to have, a taxpayer identification number. Appleby Trust submitted a new Beneficiary and Owner Designation form to NEL that was dated April 19, 2006, but again, it did not contain a taxpayer identification number.

At some point, NEL sent a premium notice to Ms. Thomas to notify her that another premium was due on April 25, 2006. The January premium still had not been paid.

On May 15, 2006, NEL processed the Beneficiary and Owner Designation form, without a taxpayer identification number, and removed Ms. Thomas as the policy owner.

The policy lapsed on June 7, 2006, due to nonpayment of the January 2006 premium.

NEL provided notices to Lexington Trust regarding the possibility of reinstatement of the policy, but it was subsequently determined that Mr. Thomas was not insurable, and reinstatement was denied on that basis.

Appleby Trust, acting as trustee of Lexington Trust, filed a complaint for declaratory judgment against NEL, claiming that NEL failed to notify it of the impending lapse and sent the premium notice to the wrong address, despite receiving the Beneficiary and Owner Designation form requesting a change of ownership on April 19. Appleby Trust sought a declaration that the insurance policy remained in full force and effect, along with a judgment for attorney's fees, costs, and expenses.

After answering the complaint, NEL filed a motion for summary judgment, claiming that it had complied with the policy, and that the policy lapsed in accordance with its terms due to nonpayment of premiums. In support of its motion, NEL submitted the affidavit of Ralph W. Haswell, Jr., who is employed as a Compliance Consultant for what appears to be a parent corporation of NEL. Mr. Haswell stated that he was familiar with the terms of the policy at issue and that NEL strictly complied with all terms and requirements of the insurance policy. He explained that premium notices were provided quarterly to the policy owner, as required by the policy terms, and that Ms. Thomas was the "documented owner" at the time of the March 25, 2006 lapse notice and the notice of the premium that was due on April 25, 2006.

Mr. Haswell also stated that although NEL first received the Beneficiary and Owner Designation form on or about March 27, 2006, the requested change of ownership was not completed for 48 days due to issues arising under Section 326 of the Patriot Act, 31 U.S.C.A. § 5318(a)(2). According to Mr. Haswell, this section of the Patriot Act addresses money laundering as it relates to terrorist activities, and it requires purchasers of insurance policy ownership rights to be positively and precisely identified. Mr. Haswell stated that a taxpayer identification number is ordinarily required, and that Lexington Trust could not be properly identified as a new customer until further examination of its trust documents in accordance with NEL policies and procedures. He further stated that an exception to the taxpayer identification number requirement was ultimately made, due to reliance upon alternative documentation and the applicant being a "Foreign Complex Trust."

In sum, Mr. Haswell stated that NEL had provided notice "to the owner of the insurance policy, as set forth by its terms," and that the policy lapsed when the required premium payment was not received. A copy of the policy at issue was attached to Mr. Haswell's affidavit. It stated that the policy owner and beneficiary named in the application

could be changed, but it stated that "[a] change of Owner or Beneficiary must be in written form satisfactory to the Company[.]"

In support of its motion for summary judgment, NEL argued that there was no factual or legal basis to support the plaintiff's position that notice should have been provided in any manner other than as it was provided. Appleby Trust filed a response in which it argued that the duty of good faith and fair dealing required NEL to inform it of the impending lapse of the policy. Appleby Trust further alleged in its response that NEL violated its duty of good faith by "knowingly and intentionally delay[ing] processing" of the Beneficiary and Owner Designation form while "disingenuously claiming that there were compliance issues under the Patriot Act." Appleby Trust submitted the affidavit of Raul Correa, whom it employs as a "Policy Administrator." Mr. Correa stated that the Beneficiary and Owner Designation form was properly completed and that Appleby Trust, as a foreign entity, was not required to have a United States taxpayer identification number because it does not seek U.S. tax benefits. Mr. Correa stated that NEL "knew that the Plaintiff was the owner" of the policy when it received the first Beneficiary and Owner Designation form, yet it did not send a lapse notice to the plaintiff. NEL then filed a response in which it argued that there was nothing in the record to support the plaintiff's claim that it intentionally or knowingly delayed processing the form. NEL also argued that it was the plaintiff's failure to investigate the status of the premium payments that led to its damages, not any action or inaction of NEL.

The trial court subsequently entered an order granting summary judgment to NEL, with the following relevant findings:

> Where, as here, the policy provides that failure to pay the premium causes the contract to end, then the insured is contractually bound either to pay the premiums or lose the coverage. There being no issue that the premiums were not paid, under Alabama law[1], the policy lapsed in accordance with its terms.

Appleby Trust timely filed a notice of appeal.

## II.  ISSUE PRESENTED

On appeal, we must determine whether the trial court erred in granting summary judgment to NEL. For the following reasons, we affirm the decision of the circuit court.

---

[1]  The court concluded that Alabama law applied because the insurance policy was issued in that state. Neither party disputes that finding on appeal.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **Tenn. R. Civ. P. 56.04.** "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." ***Green v. Green***, 293 S.W.3d 493, 513 (Tenn. 2009) (citing *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Amos v. Metro. Gov't of Nashville & Davidson County*, 259 S.W.3d 705, 710 (Tenn. 2008)). "The moving party may make the required showing and therefore shift the burden of production to the nonmoving party by either: (1) affirmatively negating an essential element of the nonmoving party's claim; or (2) showing that the nonmoving party cannot prove an essential element of the claim at trial." ***Martin***, 271 S.W.3d at 83 (citing *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008)). "[T]o negate an essential element of the claim, the moving party must point to evidence that tends to disprove an essential factual claim made by the nonmoving party." ***Id.*** at 84 (citing *Blair v. W. Town Mall*, 130 S.W.3d 761, 768 (Tenn. 2004)). "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." ***Id.*** (citing *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. ***Id.*** However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." ***Id.*** (citing *Staples*, 15 S.W.3d at 89).

## IV. DISCUSSION

Plaintiff's complaint basically alleged that the policy was wrongfully terminated because NEL failed to notify it of the impending lapse of the policy and sent notices to the wrong person. In its motion for summary judgment, NEL claimed that it had fully complied with the terms of the policy and that the policy was properly terminated for nonpayment of premiums. NEL relied upon the policy itself, which provided that quarterly premium notices would be sent to Ms. Thomas. The policy also provided that the owner and beneficiary named in the application could be changed, but it stated that such a change must be in a written form satisfactory to NEL. NEL submitted the affidavit of Mr. Haswell, who explained why the initial request for a change of the owner and beneficiary was not in a form

satisfactory to NEL due to its lack of a taxpayer identification number.[2] Mr. Haswell further stated that Ms. Thomas was the documented owner of the policy when the required notices were sent, and he said that NEL had strictly complied with the policy terms. Based upon all of the evidence presented by NEL, we conclude that its motion for summary judgment was properly supported and shifted the burden of production to the plaintiff. NEL affirmatively negated an essential element of the plaintiff's claim by pointing to evidence that "tend[ed] to disprove an essential factual claim made by the nonmoving party" – that NEL had wrongfully terminated the policy after failing to provide proper notices. *See Martin*, 271 S.W.3d at 83.

When faced with a properly supported motion for summary judgment, "the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Id.* at 84 (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215).

> The nonmoving party may satisfy its burden of production by:
> (1) pointing to evidence establishing material factual disputes that were over-looked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06.

*Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.6). In response to NEL's motion for summary judgment, Appleby Trust filed a response and submitted the affidavit of Mr. Correa, who is employed as its Policy Administrator. Mr. Correa stated that the form was properly completed and that NEL "knew that the Plaintiff was the owner" of the policy yet failed to send it a lapse notice.

Again, the policy clearly provided that notices were to be provided to Ms. Thomas. The policy contemplated a subsequent change in the owner of the policy but stated that "[a] change of Owner or Beneficiary must be in written form satisfactory to the Company[.]" Although Mr. Correa opined that the form submitted by Appleby Trust was "properly completed," he did not dispute that the application failed to identify a taxpayer identification number for Appleby Trust, or that a taxpayer identification number is ordinarily required. Thus, we find that despite producing the affidavit of Mr. Correa, Appleby Trust failed to

---

[2] Mr. Haswell also stated that the delay in processing the form was caused by the need to review the relevant trust documents, obtain alternative documentation, and make an exception to its normal policies.

satisfy its burden of producing evidence of specific facts establishing that genuine issues of material fact existed.

We note that Appleby Trust also alleged in its response that NEL violated the duty of good faith and fair dealing by "knowingly and intentionally delay[ing] processing" of the form while "disingenuously claiming that there were compliance issues under the Patriot Act." However, it produced no evidence in support of this allegation, and therefore, it did not satisfy its burden of production in response to NEL's properly supported motion for summary judgment.

We also recognize that Appleby Trust argued in its response that the duty of good faith and fair dealing required NEL to notify it of the impending lapse of the policy because NEL allegedly "knew" from its receipt of the yet unaccepted form that Appleby Trust was the owner of the policy. However, as explained above, NEL submitted evidence demonstrating that Ms. Thomas was still the documented owner, according to the policy, at the time that the notices were sent. Thus, under the terms of the policy, NEL had no obligation to send notices to Appleby Trust. Under Alabama law, "there is no good faith contractual cause of action; that means that bad faith is not actionable absent an identifiable breach in the performance of specific terms of the contract." *Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co., Inc.*, 601 So.2d 942, 945 (Ala. 1992) (citations omitted). Simply stated, "there is no contractual cause of action for breach of an implied duty of good faith that nebulously hovers over the contracting parties, free from the specific terms of the contract." *Id.*; *see also* **Cook v. United Health Care**, No. 2:09-CV-882-WKW [WO], 2010 WL 3629766, at *6 (M.D. Ala. Sept. 10, 2010) ("Under Alabama law, there is not a free-standing contractual cause of action for 'bad faith' or failure to act in good faith, absent a more specific breach of contract.") Therefore, the duty of good faith and fair dealing did not impose an obligation on NEL to provide notices not required by the terms of the policy.

Because we find that the evidence presented by Appleby Trust in response to the motion for summary judgment failed to demonstrate the existence of a genuine issue of material fact, we affirm the trial court's grant of summary judgment to NEL.

## V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the circuit court.  Costs of this appeal are taxed to the appellant, Appleby Trust Limited, and its surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, P.J., W.S.